Rolando Lopez CHAVEZ, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 82–7459.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1983.

Decided Jan. 19, 1984.

Margaret Popkin, Los Angeles, Cal., for petitioner.

George H. Wu, Los Angeles, Cal., for respondent.

Before SWYGERT,* NELSON, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Lopez, a 32-year-old citizen of El Salvador, entered the United States without inspection in March, 1981. At his deportation hearing, Lopez requested an opportunity to file an application for political asylum. Lopez did not file his application before either of two deadlines set by the Immigration Judge (IJ). The IJ entered an order of deportation. After the time allowed for appeal had expired, Lopez filed a motion to reopen his deportation proceedings in order to file an application for asylum. Following review of the application by the Department of State, the IJ denied the motion to reopen and the Board of Immigration Appeals (BIA or Board) dismissed Lopez's appeal. We have jurisdiction under 8 U.S.C. § 1105a; we uphold the decision of the Board and deny the petition for review.

## ANALYSIS

Lopez argues that the IJ and BIA improperly refused to reopen his deportation proceeding to entertain his request for asylum. He contends the IJ applied the wrong legal standard when he improperly reviewed his petition on the merits. Finally, Lopez asserts that procedural failings in the administrative proceedings below violated the Fifth Amendment and at least require reopening.

*Motion to Reopen*

Lopez asserts that the IJ and BIA committed an abuse of discretion by denying his motion to reopen. He contends that a less rigorous showing is required for petitions to reopen involving nondiscretionary relief.

The 1980 amendment of Section 243(h) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1253(h) (Supp. V 1981), removed the granting of political asylum from within the discretion of the BIA. The Board *must* withhold deportation if certain facts exist; this court then reviews the factual findings of the BIA under the "substantial evidence" test. *McMullen v. INS,* 658 F.2d 1312, 1316 (9th Cir.1981); *accord Reyes v. INS,* 693 F.2d 597, 600 (6th Cir.1982) (per curiam). *Contra Marroquin-Manriquez v. INS,* 699 F.2d 129, 133 n. 5 (3d Cir.1983) (abuse of discretion standard of review applies). Lopez argues that a motion to reopen involving asylum claims must be granted unless the claim is merely frivolous. *See Stevic v. Sava,* 678 F.2d 401, 409

* The Honorable Luther M. Swygert, Senior Circuit Judge of the Seventh Circuit, sitting by designation.

(2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983) ("His claim is not so frivolous that it should not be tested in a plenary hearing under the legal standards established by the [United Nations] Protocol [Relating to the Status of Refugees, 19 U.S.T. 6257, 606 U.N.T.S. 268]") (footnote omitted). In addition, Lopez contends that 8 C.F.R. § 208.11 (1983), which governs requests for asylum made after the conclusion of a deportation hearing, mandates a lesser standard for motions to reopen involving asylum claims than the usual standard in 8 C.F.R. § 242.22 (1983).

The regulation cited by Lopez, however, does not allow for a lesser showing for reopening to entertain asylum claims. Instead, 8 C.F.R. § 208.11 cites 8 C.F.R. §§ 103.5 and 242.22 as the basis for any motion to reopen. We have therefore held that it is within the discretion of the BIA to determine whether a proceeding should be reopened for an asylum claim. *Samimi v. INS,* 714 F.2d 992, 994 (9th Cir.1983). Other circuits, disagreeing with *Stevic,* have concluded that the BIA's denials of reopening in such cases must be reviewed under an abuse of discretion standard. *Minwalla v. INS,* 706 F.2d 831, 834 (8th Cir.1983); *see Sanchez v. INS,* 707 F.2d 1523, 1527 n. 9 (D.C.Cir.1983) (per curiam). In order to be entitled to a reopening, the petitioner must make a prima facie showing that he is eligible for asylum. *Samimi,* 714 F.2d at 994.

*Prima Facie Case*

Lopez next asserts that even if a *prima facie* case is required, he made a sufficient showing that his "life or freedom would be threatened in [El Salvador] on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h). The parties here (and the circuits) dispute whether recent changes in the law have altered the showing required. *Compare Stevic,* 678 F.2d at 405–06 ("good reason" to fear persecution), and *Reyes,* 693 F.2d at 600 (same), with *Rejaie,* 691 F.2d at 146 ("well-founded fear" and "clear probability of persecution" standards are equivalent), and *Kashani v. INS,* 547 F.2d 376, 379 (7th Cir.1977) (same). As in

our recent case of *Shoaee v. INS,* 704 F.2d 1079, 1084 (9th Cir.1983), however, we conclude that we need not settle the arguments over standards because Lopez's claim would fail even under the "somewhat more generous" standard in *Stevic. See also Minwalla,* 706 F.2d at 835 n. 2 (same).

Lopez's application for asylum stated that three or four men threatened him in the middle of the night by shouting and knocking on his door with the butts of their pistols. He said that he was almost run over by a car with government plates and that another security guard where he worked was killed. He also claimed that he would be suspected of subversion because of his brief membership in a workers' association nine years ago. Finally, Lopez referred to another Salvadorian who was killed after his repatriation from the United States. In this appeal, Lopez additionally argues that he would suffer persecution because of his membership in particular social groups and because of his political opinions. Specifically, Lopez claims that he faces the threat of persecution because of his former employment as a security guard and by being a young urban male neither in the military nor with the guerrillas.

The BIA reviewed this evidence and concluded that Lopez "has not made a *prima facie* showing that his fear of being singled out for persecution is well-founded." We cannot say that this conclusion was an abuse of discretion. In his application, Lopez noted that "anyone who wears a uniform or carries a weapon is assumed to have been a soldier before, and this makes them a target of the guerrillas; and, people are often killed because someone else wants their weapon." The men who knocked at his door evidently knew Lopez worked as an armed security guard. But Lopez no longer works as a security guard, and danger arising from mere gun ownership would not qualify as persecution within the meaning of § 1253(h). Lopez also admitted that the near-accident with the car could have been a coincidence. Finally, his co-worker had witnessed a murder and Lopez said that the murderer could have wanted to eliminate a potential informant.

Lopez's assertions of potential persecution based on his remote membership in a union are not convincing, nor has he presented any specific evidence of such persecution. *See Agustin v. INS,* 700 F.2d 564, 565 (9th Cir.1983) (per curiam), *Moghanian v. United States Dept. of Justice,* 577 F.2d 141, 142 (9th Cir.1978). His status as a "young urban male" is not specific enough for political asylum. "There must be some special circumstances present before relief can be granted." *Martinez-Romero v. INS,* 692 F.2d 595, 595–96 (9th Cir.1982). Nor has Lopez set forth any evidence indicating that he has any reason to believe he will in fact be persecuted for his refusal to take sides. *See Sanchez,* 707 F.2d at 1527. In addition, Lopez's family has remained in El Salvador and has not been harassed. *See Marroquin-Manriquez v. INS,* 699 F.2d at 131. The tragic and widespread danger of violence affecting all Salvadorians is not persecution under 8 U.S.C. § 1253(h). *Martinez-Romero,* 692 F.2d at 595–96. In summary, we cannot say that the BIA abused its discretion, *see INS v. Wang,* 450 U.S. 139, 144–45, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam); *Agustin,* 700 F.2d 565–66, in concluding that Lopez did not establish a *prima facie* case. In view of our determination of that issue, we need not address the question whether Lopez explained his failure to raise his claim of asylum in timely fashion. We do note, however, that the record poses serious problems for Lopez in that regard as well.

*Administrative Deficiencies*

Lopez asserts that the INS improperly failed to give notice of his second deportation hearing to his retained counsel. Six days earlier, however, Lopez in writing informed the IJ that he had dismissed his attorney and was seeking new *pro bono* representation. There was no violation of 8 C.F.R. § 292.4(a), which governs substitution of new counsel. The regulation does not control Lopez's decision to seek a new lawyer. Lopez also maintains that the IJ should have had a transcript of the administrative proceeding prepared. However, Lopez did not request the transcript nor raise this issue before the BIA, foreclosing review here. *See* 8 U.S.C. § 1105(c); *Tejeda-Mata v. INS,* 626 F.2d 721, 726 (9th Cir. 1980), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). Finally, Lopez requests that we require the BIA to consider voluntary departure instead of its order of deportation. Lopez has not shown that the INS violated its regulations or applicable law. *See United States v. Calderon-Medina,* 591 F.2d 529, 531–32 (9th Cir.1979). We can find no abuse of discretion.

PETITION DENIED.