Salvador **DEL VALLE,** Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 84–7318.

United States Court of Appeals, Ninth Circuit.

Submitted July 11, 1985.*

Decided Nov. 19, 1985.

---

\* The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir. 3(f).

Jeffrey Portnoy, North Hollywood, Cal., for petitioner.

George H. Wu, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before ANDERSON and TANG, Circuit Judges, and LEAVY,** District Judge.

TANG, Circuit Judge:

Salvador Del Valle petitions for review of a deportation order from the Board of Immigration Appeals (BIA). Affirming the decision of the Immigration Judge (IJ), the BIA determined that petitioner had not established eligibility for withholding of deportation under section 243(h) of the Immigration and Nationality Act (INA), as amended by section 203(e) of the Refugee Act of 1980, 8 U.S.C. § 1253(h) (1982), or for political asylum under section 208(a) of the Refugee Act, 8 U.S.C. § 1158(a).

For the reasons set forth below, we reverse the BIA's denial of relief under section 243(h). Accordingly, we find Del Valle eligible for asylum under section 208(a) and remand to the BIA for a determination of whether to grant that relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Del Valle is a native and citizen of El Salvador. He came to the United States in December, 1980. During the course of deportation proceedings in March, 1982, petitioner admitted entering the country in violation of section 241(a)(2) of the INA, 8 U.S.C. § 1251(a)(2), and conceded deportability on that basis. He then applied for political asylum under the provisions above.

Petitioner presented the following evidence in support of his asylum claim:

(1) In September, 1980, Del Valle received three notes and phone calls from a right wing group known as the Squadron of Death urging him to join them as informer. (Certified Administrative Record (AR) 206.)

(2) Del Valle testified that on September 8, 1980, his second cousin, Douglas Roberto Ramos Duran, and two other individuals were kidnapped by five men in a white van. (AR 48.) His cousin was a close friend (id.) and lived next door to Del Valle. Soon thereafter Duran was found dead. (Id.) No group took responsibility for the death (AR 49), and Duran had not been involved with guerrilla activity (id.). Duran's mother, Alva Duran Ramos, testified and corroborated this testimony. (See AR 73–75.) Petitioner also submitted a newspaper clipping (AR 183–84) and letters from El Salvador (AR 185–191) corroborating his cousin's death.

(3) After the cousin's death, petitioner received "an invitation" to join the Squadron of Death (AR 49, 67), which he did not accept.

(4) Del Valle testified that on December 2, 1980 around 10 p.m. he was followed home by four men dressed in civilian clothes. These men stopped him near his home and began firing guns into the air. (AR 50, 206.) His grandmother eventually called him inside. (AR 51, 206.) Approximately two hours later, fifteen men broke down the door of his apartment. (AR 51–51, 206.) The men carried machine guns (AR 206) and were clothed in military garb (AR 52, 206). One man asked another whether Del Valle was a member of the Popular Force of Liberation (FPL), a group associated with the guerrillas in El Salvador. (AR 206.) The second man responded affirmatively. (Id.) Del Valle's hands were tied behind his back, he was hit in the stomach, and taken from his home. (AR 53, 206.) He was laid face down in a jeep and taken to the group's "headquarters."

** Honorable Edward Leavy, United States District Judge for the District of Oregon, sitting by designation.

(AR 53–54, 206.) There he was blind-folded, interrogated, and beaten. (AR 54–55, 206.) He was questioned about involvement with the FLP, which he denied. (AR 54, 206.) Afterwards he was left alone for a while, and then transported by jeep to a place Del Valle describes as a police station. (AR 55–56, 206.) He spent the night there, and was then released the next day, with the help of a female friend. (AR 56.) The testimony of Alva Duran Ramos corroborates this story. (AR 75–76.) Del Valle also submitted letters from El Salvador which generally corroborate his capture on December 2, 1980. (See AR 185–191.)

(5) Upon the advice of friends and family, petitioner left El Salvador two days after this incident. (AR 57, 207.) He did not obtain an exit visa from El Salvador. (AR 204A.)

(6) In March, 1981, Del Valle's nephew, Rafael Castillo Del Valle, was violently taken from his home. (AR 58, 207.) The nephew lived at Del Valle's house. (AR 207.) The nephew has not been heard from since that incident. (AR 58, 207.) The nephew was not involved in guerrilla activity. This disappearance is corroborated by Alva Ramos' testimony (AR 77), a newspaper clipping (AR 183–84), and letters from El Salvador (see AR 185–191).

(7) Petitioner states that he has not been involved with guerrilla activity (AR 49), and that he wishes to remain politically neutral in the conflict in his country (AR 69).

(8) Petitioner submitted evidence documenting the violent and unstable conditions of El Salvador at the time of his departure. (See AR 91–181.) Specifically, Del Valle presented documentation that individuals believed linked to groups opposed to the El

Salvadoran government had "disappeared" or been murdered (AR 96) and that military force had been used to crush opposition movements (AR 96). Torture and death at the hands of paramilitary "security forces" is also documented. (See AR 99, 101, 103–105, 159).

The IJ denied relief under both asylum sections. On appeal, the BIA found that petitioner's statements were substantially corroborated such that it was satisfied that his allegations were true. Despite this credibility finding, the BIA affirmed the decision of the IJ, reasoning that the most likely explanation for Del Valle's release was that the security forces were convinced that petitioner was not associated with opposition groups, and therefore it was not likely that petitioner would be persecuted if he returned. The BIA concluded that petitioner had not shown a "realistic likelihood" that he would be persecuted if returned to El Salvador.

Del Valle challenges the foundational adequacy of the BIA's findings.

## DISCUSSION

### I. Legal Framework

Two code sections govern relief from deportation based on the threat of persecution. Section 243(h) of INA, 8 U.S.C. § 1253(h), requires the Attorney General to withhold deportation if an alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Section 208(a) of the Refugee Act, 8 U.S.C. § 1158(a), provides for asylum for aliens with a well-founded fear of persecution.

### A. Section 243(h): The "Clear Probability" of Persecution Standard

In order to be granted relief from deportation under section 243(h),[1] an alien must establish:

1. Section 243(h)(1) provides in pertinent part: The Attorney General shall not deport or return any alien … to a country if the Attor-

ney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality,

(1) A likelihood of persecution; i.e., a threat to life or freedom.

(2) Persecution by the government or by a group which the government is unable to control.

(3) Persecution resulting from the petitioner's political beliefs.

(4) The petitioner is not a danger or a security risk to the United States.

*Zepeda-Melendez v. INS*, 741 F.2d 285, 289 (9th Cir.1984).

■ The alien bears the burden of showing a "clear probability" of persecution, *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 2496, 81 L.Ed.2d 321 (1984); *Bolanos-Hernandez v. INS*, 749 F.2d 1316, 1320 (9th Cir.1984), that is, "whether it is more likely than not that the alien would be subject to persecution," *Stevic*, 104 S.Ct. at 2498; *Bolanos*, 749 F.2d at 1320. General evidence of widespread conditions of violence in a country is not in itself sufficient to establish a clear probability of persecution. *Id.* at 1323 (citing *Zepeda-Melendez*, 741 F.2d at 290). There must be some evidence that the applicant or those similarly-situated are at a greater risk than the general population, *see id.* at 1323, and the threat to the applicant is a serious one, *id.* at 1324.

**B. Section 208(a): The "Well-Founded Fear" of Persecution Standard**

■ In order to be eligible for relief under section 208(a), an applicant must show that he or she is a "refugee" within the meaning of section 201(a) of the Refugee Act, 8 U.S.C. § 1101(a)(42)(A). A refugee is a person who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular group, or political opinion. *Id.* If an alien qualifies as a refugee, the Attorney General has the discretion to grant asylum under section 208(a). 8 U.S.C. § 1158(a). *See* 8 C.F.R. § 208.8 (1985) for a list of factors governing the discretion.

■ We have recently held that the well-founded fear standard is "more generous" than the clear probability standard.

*Bolanos-Hernandez*, 749 F.2d at 1321. Thus, if an applicant establishes that he or she has met the clear probability standard, *a fortiori* he or she will have met the well-founded fear standard. *Id.* at 1322. More recently we have established that asylum applicants must present "specific facts" through objective evidence to prove either past persecution or "good reason" to fear future persecution in order to meet the well-founded fear standard. *Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1453 (9th Cir.1985) (consolidated with *Arguello-Salguera v. INS*, No. 84–7593) (adopting evidentiary requirements of *Carvajal-Munoz v. INS*, 743 F.2d 562, 574 (7th Cir.1984)). Documentary evidence of past persecution or a threat of future persecution will usually suffice to meet the "objective component" of the evidence requirement. *Cardoza-Fonseca*, 767 F.2d at 1453. If documentary evidence is not available, the applicant's testimony will suffice if it is credible, persuasive, and refers to *"specific* facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution." *Id.* (quoting *Carvajal-Munoz*, 743 F.2d at 574). Likewise, the well-founded fear standard has a "subjective component" that requires an analysis of the applicant's mental state. *Id.* at 1452; *Bolanos-Hernandez*, 749 F.2d at 1321. This component becomes relevant only after objective evidence suggesting a risk of persecution has been introduced. *Cardoza-Fonseca*, 767 F.2d at 1453.

**II. Standard of Review**

**A. Section 243(h)**

■ Requests for asylum are to be considered on a case-by-case basis and require a review of the whole record. *Zavala-Bonilla v. INS*, 730 F.2d at 562, 565 (9th Cir. 1984). Because Section 243(h) relief is not discretionary, we review the BIA's denial of an application for a prohibition of deportation under a substantial evidence standard. *Bolanos-Hernandez*, 749 F.2d at

membership in a particular social group, or political opinion.

1320 n. 8; *Saballo-Cortez v. INS*, 761 F.2d 1259, 1262 (9th Cir.1984).

## B. Section 208(c)

■ The determination of whether an alien has a well-founded fear of persecution, and is therefore eligible for asylum under section 208(c), is based upon factual findings and accordingly is reviewed for substantial evidence. *Bolanos-Hernandez*, 749 F.2d at 1321, 1321 n. 9. The decision to grant or deny asylum under section 208(a) is then reviewed for an abuse of discretion. *Id.* at 1321 n. 9.

## III. Withholding of Deportation Under Section 243(h) [2]

Petitioner first claims that the BIA's denial of his request for withholding of deportation is not supported by substantial evidence.

## A. Likelihood of Persecution

■ In deciding whether Del Valle had shown a clear probability of persecution, the BIA accepted Del Valle's allegations as true, but concluded that Del Valle's explanation that he was released because the security forces wanted to avoid responsibility for his disappearance was improbable. The BIA reasoned that since Del Valle's interrogators had acted so conspicuously when they initially had stopped Del Valle in the street and then had broken into his home, it was unlikely that they were concerned with avoiding responsibility for his capture. The BIA concluded that the more likely explanation for petitioner's release was that the security forces were satisfied that he was not a member of the opposition, and therefore it was unlikely that Del

Valle would be subject to persecution upon his return. The BIA also concluded that petitioner had not shown that the circumstances relating to the killing of his cousin and disappearance of his nephew were related to his own situation.

Accepting Del Valle's version of the facts,[3] it is clear that the petitioner has presented specific evidence of persecution. *See Chavez v. INS*, 723 F.2d 1431, 1434 (9th Cir.1984). The question remains whether the BIA's determination that it is unlikely that Del Valle will be persecuted if returned is supported by substantial evidence.

The BIA's conclusions, however, are based upon an inaccurate reading of the record and improper inferences, and thus we hold that those conclusions are not supported by substantial evidence. First, the BIA mischaracterizes Del Valle's explanation for his release. In his affidavit, Del Valle stated that during the interrogation he was asked if anyone had witnessed his capture. (AR 206.) He answered affirmatively. (*Id.*) He also stated that *his friends and family* had told him to leave because the security forces had released him only to absolve themselves of responsibility for his disappearance. (AR 207.) In his testimony, Del Valle explained that a female friend of his had exercised some influence and helped gain his release. (AR 56, 63.) Alva Duran Ramos corroborated that event. (AR 75.) During cross-examination, Del Valle testified that he did not know the exact reason why he was released. (AR 63.) Therefore, Del Valle offered little to explain the fortuity of his release, and the record supports that his female friend helped secure his freedom.

---

**2.** In considering the four requirements for withholding of deportation, the government does not contend that Del Valle would not face persecution by a group which the El Salvadoran government is unable to control, or that petitioner is a security risk. *See Zepeda-Melendez*, 741 F.2d at 289. The record indicates that Del Valle meets these requirements for withholding of deportation, and accordingly we do not discuss them.

**3.** It is petitioner's burden to demonstrate that his statements are credible. *Saballo-Cortez*, 761 F.2d at 1262. We agree with the BIA that petitioner's statements are credible. Petitioner's testimony is consistent with the statements in his asylum application. Many of the specifics are corroborated by the testimony of Alva Duran Ramos. His capture is corroborated by letters from home. Newspaper clippings document the murder of his cousin and disappearance of his nephew.

The BIA concluded that petitioner was released because the security forces were satisfied that he was not a member of opposition forces. However, there is no evidence in the record to support this reasoning. The security forces did not indicate to Del Valle or to his family that he was free of suspicion.[4] We cannot permit the BIA to infer that an applicant is unlikely to be persecuted *solely* on the basis that the applicant was released by his persecutors. This would lead to the absurd result of denying asylum to those who have actually experienced persecution and were fortunate enough to survive arrest or detention.

"[W]hen allegations are specific and supported by evidentiary material, and the [BIA] denies eligibility for relief, it must give reasons for its decisions showing that it has properly considered the circumstances." *Santana-Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981)(BIA's denial of suspension of deportation reversed and remanded). In this case, the BIA's conclusion that the security forces released Del Valle because they were satisfied that he was not part of the opposition is not based on substantial evidence, but upon conjecture.

The IJ and BIA found the death and disappearance of Del Valle's two relatives unrelated to the likelihood that he would be persecuted. It is true that, to the best of Del Valle's knowledge, his relatives had not been a part of the opposition, and that his family had little information as to who had killed his relatives and why. Nonetheless, this evidence does suggest that his family has been particularly affected by the conditions in their country, *see Chavez v. INS*, 723 F.2d at 1434 (no evidence that asylum applicant's family had been harassed since applicant's departure from El Salvador indicates it is less likely that applicant will be subject to persecution upon his return); *Sanchez v. INS*, 707 F.2d 1523, 1527–28 (D.C.Cir.1983) (lack of evidence

that applicant's family had ever been interrogated, arrested, imprisoned or persecuted indicates it is unlikely applicant will be persecuted), and helps support Del Valle's claim for asylum.

Del Valle has also presented adequate documentation that a threat of persecution from "security forces" in El Salvador represents a serious one. *Bolanos-Hernandez*, 749 F.2d at 1324.

### B. Persecution Based Upon Political Belief

■ In *Bolanos-Hernandez*, we recognized that the decision to remain neutral can be a decision of political conscience. 749 F.2d at 1324–25. In that case, Bolanos had severed past ties with right-wing organizations in El Salvador, and had then been asked by the guerrillas to join them. When he refused, he was threatened with death if he did not leave the country. In *Argueta v. INS*, 759 F.2d 1395 (9th Cir.1985), we held that the testimony of an asylum applicant before an IJ that he wished to remain politically neutral constituted an expression of political opinion. *Id.* at 1397. In that case, Argueta had been accused of being a member of the FPL and threatened with "disappearance" if he did not leave the country.

In this case, Del Valle's asylum application indicates that he was aware of the political conflict and instability in his country, and decided to continue his studies, amidst the violence, at the National University in San Salvador. (AR 205.) When the "Armed Forces" took over the University, his studies ended, and he decided to work in his community organizing sports for young people. (*Id.*) The record indicates that he received three notes and phone calls from the Squadron of Death asking him to join as an informant, and that he failed to join. (AR 49, 67, 206.)

---

**4.** The BIA noted that the security forces have not inquired as to Del Valle's whereabouts since his departure and reasoned that this supports its conclusion that the security forces are satisfied

that Del Valle is not a member of the opposition. However, there is no evidence in the record as to whether the security forces have or have not made such inquiries.

We find that Del Valle has deliberately and consciously chosen to remain neutral. Del Valle has testified that he is neither of the right nor left and wishes to remain neutral. *See Argueta,* 759 F.2d at 1397. His actions in El Salvador bespeak his neutral convictions. Aware of the conflict in El Salvador, Del Valle chose a neutral course, and pursued studies and organizing sports within his community. When approached, on several occasions, by the Squadron of Death, he did not accept their invitation to join. Del Valle has therefore made a considered choice to take a neutral stance, *Bolanos-Hernandez,* 749 F.2d at 1325,[5] and, based upon his past persecution, is likely to be persecuted for maintaining his political neutrality if he returns.[6]

### IV. Asylum Under Section 208(a)

Because we find that petitioner has established, by a clear probability, that it is likely that he will be persecuted if returned, he has also established that he has a well-founded fear of persecution, and is eligible for relief under section 208(a). *Bolanos-Hernandez,* 749 F.2d at 1322. We therefore remand to the BIA for a determination of whether to grant the requested relief in accordance with the factors listed in 8 C.F.R. § 208.8.

### CONCLUSION

The BIA's conclusion that Del Valle is not likely to be persecuted if returned is not supported by substantial evidence. Accordingly, the BIA's denial of relief under section 243(h) is reversed. The BIA's determination that he is not eligible for relief under section 208(a) is likewise reversed, and this claim remanded for a determination of whether to grant such relief.

---

**5.** In *Bolanos-Hernandez,* we left open the question of whether, absent more, a refusal to join a particular side, constituted an expression of political opinion. 749 F.2d at 1326 n. 18. We now determine that, under this set of facts, Del Valle's refusal, in combination with his deliberate non-involvement prior to his refusal, does evidence such an opinion.

**6.** This situation contrasts with that in *Chavez v. INS,* in which the asylum applicant claimed that he would be persecuted because he was a young, urban male who had refused to take sides in the conflict in El Salvador. Because the applicant had not set forth any evidence that he in fact had reason to believe he would be persecuted for his refusal, his asylum claim failed. *Chavez,* 723 F.2d at 1434. Del Valle has produced specific evidence of past persecution which gives reason to believe he will be once again persecuted if he returns.