**Marvin O. CRUZ–LOPEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 85–1753.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1986.

Decided Oct. 10, 1986.

Daria Goggins, Student Counsel (Richard A. Boswell, The George Washington University, Nat. Law Center, Immigration Law Clinic, Washington, D.C., on brief), for petitioner.

Thomas W. Hussey, Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice (Richard K. Willard, Asst. Atty. Gen., Millicent Clark, Dawn McPhee, Asst. Director, Michael P. Lindemann, Washington, D.C., on brief), for respondent.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Marvin Cruz-Lopez, an illegal immigrant from El Salvador, has petitioned this court for relief from a Bureau of Immigration Appeals (BIA) determination that he cannot remain in the United States. Cruz-Lopez claims that he deserves a discretionary grant of asylum under sections 101(a)(42)(A) and 208(a) of the Immigration and Naturalization Act of 1952 as amended, (INA), 8 U.S.C. §§ 1101(a)(42), 1158(a),

or the mandatory withholding of deportation under section 243(h) of the INA, 8 U.S.C. § 1253(h). Although we sympathize with Cruz-Lopez's desire not to return to war-torn El Salvador, we believe that the BIA's refusal of relief was proper.[1]

I.

Cruz-Lopez, a well-off, Catholic, El Salvadoran male, now in his early twenties, left his native country in March 1981. He departed at the insistence of his family, after he found a handwritten note purportedly from a guerilla group posted on the front door of his home. In translation the note said, "Join the BPR [a guerilla group] or you will regret it." Cruz-Lopez's initials appeared in the lower right corner of the note.

Such notes are apparently common in El Salvador. Some of Cruz-Lopez's friends and distant relatives have received similar notes and have not been harmed. One close friend was tortured and murdered by guerillas, however, shortly after his family received a similar note. As of this writing, neither Cruz-Lopez nor members of his immediate family have been harmed by any guerilla group or by the government.

Cruz-Lopez was and is politically neutral. Nevertheless, he has been affected by the chaos in his country. His private school was sometimes cancelled because of street fighting, and his school bus was attacked by guerillas. Three distant cousins, some of whose names Cruz-Lopez cannot recall, have been killed, and another distant cousin was raped.

Cruz-Lopez's uncle by marriage, a legal resident of the United States, is a leader of the Oscar Romero Committee, a group which works in the United States to oppose

---

1. We review a refusal to withhold deportation under § 1253(h)(1) under a "substantial evidence" standard. *See Sagermark v. INS,* 767 F.2d 645, 649 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *Young v. United States Department of Justice, INS,* 759 F.2d 450, 456 n. 6 (5th Cir.1985); *Carvajal-Munoz v. INS,* 743 F.2d 562, 569 (7th Cir.1984). The decision to deny refuge status under

§ 1101(a)(42)(A) is also reviewed for "substantial evidence." *See Sagermark,* 767 F.2d at 649; *Carvajal-Munoz,* 743 F.2d at 567. Finally, even if an alien is deemed a "refugee" under § 1101(a)(42)(A), the refusal to grant him asylum under § 1158(a) is reviewed for an abuse of discretion. *See Sagermark,* 767 F.2d at 649; *Carvajal-Munoz,* 743 F.2d at 567.

the existing government in El Salvador. Cruz-Lopez has disavowed the political beliefs of the Oscar Romero committee and has spent little time with his uncle during his stay in the United States. Aside from claiming neutrality in El Salvador's civil war, Cruz-Lopez has espoused no personal political philosophy.

Cruz-Lopez was apprehended by the Immigration and Naturalization Service (INS) shortly after his entry into the United States five years ago. An Immigration Judge decided that even after crediting Cruz-Lopez's description of his situation, Cruz-Lopez did not qualify for relief under 8 U.S.C. §§ 1158(a), 1253(h). In lieu of forced deportation, however, the Immigration Judge gave Cruz-Lopez three months to leave the United States voluntarily. *See* INA, § 244(e), 8 U.S.C. § 1254(e) (discretion to permit voluntary departure).

On appeal, the BIA agreed with the Immigration Judge's conclusion that Cruz-Lopez did not deserve relief under 8 U.S.C. §§ 1158(a), 1253(h). The BIA refused to review the grant of a voluntary departure privilege, claiming that it lacked jurisdiction to do so under 8 C.F.R. § 3.1(b)(2) (1985) (no review of voluntary departure grants of at least thirty days). Cruz-Lopez then filed this petition for review. He has remained in the United States pending our disposition.

## II.

Cruz-Lopez's first asserted ground for relief is 8 U.S.C. § 1253(h). Under that provision, the government is barred from deporting an alien if his "life or freedom would be threatened [in his native country] ... on account of ... membership in a particular social group, or political opinion." *Id.* § 1253(h)(1). Even if we assume, without deciding, that Cruz-Lopez is a member of "a particular social group"[2] or holds a "political opinion"[3] as intended by the statute, the BIA's denial of relief under section 1253(h) was not improper.

In order to prevail on a mandatory withholding of deportation request under section 1253(h), the alien must offer evidence establishing that "it is more likely than not that [he] ... would be subject to persecution on one of the specified grounds" upon his return. *INS v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). The alien must prove a "clear probability of persecution," not merely an understandable fear of persecution. *See id.* at 425, 104 S.Ct. at 2501.

The Supreme Court has chosen to leave the "clear probability of persecution" test deliberately undefined. *Id.* at 429, 104 S.Ct. at 2501. This circuit has no relevant precedent, but our sister circuits generally agree that the illegal alien must offer spe-

---

**2.** Cruz-Lopez's definition of the "social group" to which he belongs has been less than consistent throughout this dispute. In his request for asylum, Cruz-Lopez emphasized Catholicism as one identifying feature of his asserted "social group." Before this court, Cruz-Lopez defined his "social group" as "affluent students who attend private schools, have relatives in the intelligentsia, have received direct threats against their lives, and have friends and family members who have been singled out for persecution."

The Immigration Judge held that Cruz-Lopez's class, then characterized as "young, single male students and Roman Catholics," was too general to constitute a protected social group under the statute. The BIA suggested that it found Cruz-Lopez's social group unconvincing. It went on to hold that even if Cruz-Lopez is a member of a "social group," the probability of persecution is insufficient for relief. Our decision today rests on

the sufficiency of the probability of persecution. We express no opinion on whether a class similar to that described by Cruz-Lopez constitutes a "social group" under the statute.

**3.** Cruz-Lopez maintains that his neutrality constitutes a "political opinion." The validity of this contention is a question of first impression in this circuit. Case law in the Ninth Circuit suggests that a conscious and deliberate choice to remain neutral constitutes a political opinion. *See Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1286 (9th Cir.1985). The "mere failure to join any side, absent a conscious choice" poses a more difficult question. *Id.* at 1287 n. 18. Because we find an absence of the requisite probability of persecution, we express no opinion on whether Cruz-Lopez's neutrality is a "political opinion" under the statute.

cific facts "that *this particular* applicant will more likely than not be singled out for persecution." *Carvajal-Munoz v. INS*, 743 F.2d 562, 573 (7th Cir.1984). *Accord Youk-hanna v. INS*, 749 F.2d 360, 361 (6th Cir. 1984). Allegations based only on the general climate of violence in the country are insufficient. In fact, even a specific threat to petitioner may be insufficient, if the threat can be characterized as random, or one which the threatening group lacks the will or ability to carry out. *Bolanos-Her-nandez v. INS*, 767 F.2d 1277, 1285–86 (9th Cir.1985); *see also Diaz-Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir.1986) (threatening letter left on petitioner's car windshield insufficient to establish "reasonable expectation of persecution" for relief under sections 1158(a) and 1253(h)).

■ Cruz-Lopez's evidence fails to establish the clear probability of persecution required for relief under section 1253(h). The type of note received by Cruz-Lopez is widespread in El Salvador, and Cruz-Lopez admits that many friends who received similar notes have remained unharmed. Cruz-Lopez's position is no different from that of many young, urban males "invited" to join guerilla groups. Unfortunately, this country cannot serve as a haven for all of them. *See Zededa-Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984) (deportation upheld for El Salvadoran recruited because of the strategic location of his family's house); *Chavez v. INS*, 723 F.2d 1431, 1434 (9th Cir.1984) (deportation upheld for El Salvadoran threatened because he had been an armed security guard). *See also Diaz-Escobar*, 782 F.2d at 1493 (deportation of Guatemalan who received threatening note upheld).

Evidence in addition to the one note, such as continuing threats, violence toward him,

threats and violence toward his immediate family, or his special value to the guerillas, might establish a clear probability that the guerillas seriously intend to pursue Cruz-Lopez's recruitment. *Cf. Del Valle v. INS*, 776 F.2d 1407 (9th Cir.1985) (deportation withheld for El Salvadoran who had been kidnapped and beaten and who was wanted as an informant by a right-wing group); *Bolanos-Hernandez*, 767 F.2d at 1280, 1284–86 (deportation withheld for former army officer and right-wing party member recruited by guerillas to infiltrate the government whose five friends and brother have been killed). Cruz-Lopez has offered no such evidence, however. He has, therefore, failed to establish a "clear probability," as opposed to a possibility, of persecution required for the mandatory withholding of deportation under section 1253(h).

### III.

Cruz-Lopez further argues that the BIA erred in refusing asylum under 8 U.S.C. § 1158(a). Section 1158(a) authorizes discretionary grants of asylum to aliens who qualify as "refugees" under 8 U.S.C. § 1101(a)(42)(A). A "refugee" is an alien who is unwilling or unable to return to his native land "because of persecution or a well-founded fear of persecution on account of ... membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).[4]

Given our disposition of the request to withhold deportation, Cruz-Lopez's asylum argument cannot prevail unless the standard for granting asylum is more generous than the standard for withholding deportation. In *Stevic*, 467 U.S. at 425, 104 S.Ct. at 2498, the Supreme Court assumed, without deciding, that the standards do differ.[5]

---

**4.** As discussed in footnotes 2 and 3, we are willing to assume, without deciding, that Cruz-Lopez can satisfy the threshold requirement of membership in a particular social group or adherence to a political opinion.

**5.** The Supreme Court may resolve the issue left open in *Stevic* in its next term. The Court has granted certiorari in *Cardoza-Fonse-ca v. United States INS*, 767 F.2d 1448

(9th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986) (No. 85–782), a case in which the Ninth Circuit held that the "well-founded fear" test is more generous to aliens than the "clear probability of persecution" test. The Supreme Court's action does not require us to stay disposition of this case, however. Under any one of the spectrum of tests used by our sister circuits to evaluate asylum claims, the BIA's decision with re-

In the wake of *Stevic*, several of our sister circuits have held that the "well-founded fear" requirement for asylum is more lenient than the "clear probability of persecution" standard for withholding deportation. *See, e.g., Guevara Flores v. INS*, 786 F.2d 1242, 1249 (5th Cir.1986); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1283 (9th Cir.1985); *Carvajal-Munoz v. INS*, 743 F.2d 562, 573–75 (7th Cir.1984). The Third Circuit, however, has adhered to its pre-*Stevic* view that the standards are "for all practical purposes" identical. *Sotto v. United States INS*, 748 F.2d 832, 836 (3d Cir.1984). The INS stands with the Third Circuit in insisting that the standards "as a practical matter ... converge." *Matter of Acosta*, Int.Dec.No. 2986, at 5 (BIA March 1, 1985).

Resolution of the case at bar does not require us to choose between competing characterizations of the relationship between withholding deportation under section 1253(h) and granting asylum under section 1158(a). Although the INS maintains that the proper standard governing Cruz-Lopez's asylum claim does "not meaningfully diff[er]" from the standard for withholding deportation, the BIA invoked all the relevant standards in evaluating Cruz-Lopez's claim. The BIA concluded that Cruz-Lopez "has failed to adequately substantiate his asylum claim regardless of whether such claim is assessed in terms of demonstrating a 'clear probability', a 'realistic likelihood', a 'reasonable possibility' or a 'good reason to fear' persecution." (Joint Appendix at 3). We conclude that the BIA's decision under this spectrum of standards should be upheld. *See Carvajal-Munoz*, 743 F.2d at 575–76 (upholding BIA refusal to grant asylum under a spectrum of standards).

If the standards are identical, our discussion in Part II disposes of Cruz-Lopez's asylum claim. Even if we use the more generous test adopted by the Ninth Circuit and urged upon us by petitioner, substantial evidence still supports the refusal to characterize Cruz-Lopez as a "refugee" under section 1101(a)(42)(A) for purposes of asylum under section 1158(a). In its most generous form, the "well-founded fear" test requires the alien to establish that he has a subjective fear of returning and that this fear has enough of a basis in specific facts to be considered "well-founded" upon objective evaluation. *See Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1453 (9th Cir. 1985), *cert. granted*, — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). The alien must offer " 'specific facts' " detailing a " 'good reason' " to fear persecution, *Del Valle*, 776 F.2d at 1411 (quoting *Carvajal-Munoz*, 743 F.2d at 574), or establishing an objectively reasonable "expectation of persecution." *Diaz-Escobar*, 782 F.2d at 1493.

■ Cruz-Lopez relies on the handwritten note as the "specific fact" giving him a "good reason" to fear persecution. As has been discussed, however, such notes are distributed widely throughout El Salvador, and they are frequently nothing more than idle threats. Cruz-Lopez has offered no evidence, in the form of repeated threats, or personal or familial persecution, tending to indicate that the threat he received was serious or that the guerillas will persist in their recruiting effort. Accordingly, even under the more lenient test, substantial evidence supports the BIA's conclusion that Cruz-Lopez's fear is not objectively well-founded. *See Diaz-Escobar*, 782 F.2d at 1493 (Ninth Circuit case reaching same result with respect to threatening note left on petitioner's windshield). The BIA's denial of asylum, therefore, is affirmed.

### IV.

■ Finally, Cruz-Lopez challenges the Immigration Judge's grant of a three-month period for voluntary departure under 8 U.S.C. § 1254(e). Although the BIA will not review a voluntary departure grant of over thirty days, *see* 8 C.F.R. § 3.1(b)(2), this circuit will review the grant for an abuse of discretion. *See Parcham v. INS*, 769 F.2d 1001, 1003 (4th Cir.1985) (standard

spect to Cruz-Lopez should be upheld. *See infra.*

of review). *See also Hernandez-Rivera v. INS*, 630 F.2d 1352, 1356 (9th Cir.1980); *Lad v. INS*, 539 F.2d 808, 810 (1st Cir. 1976).

We find no abuse of discretion in this case. The Immigration Judge's statement with respect to voluntary departure is admittedly less than thorough, but it is clear that the Immigration Judge was intimately familiar with the relevant facts of Cruz-Lopez's case. He granted Cruz-Lopez more time than is typically granted for voluntary departure, and Cruz-Lopez has failed to offer reasons for deeming the three-month period insufficient. Aside from a period lasting until the chaos in El Salvador has ended, Cruz-Lopez has offered no reasonable alternative to the three-month period.[6] We refuse to accede to Cruz-Lopez's wishes, which would effectively convert voluntary departure into an alternative to asylum.

For the reasons discussed above, this petition for review is hereby denied.

DENIED.

HARRISON L. WINTER, Chief Judge, dissenting:

I respectfully dissent. While I agree that Cruz-Lopez has not shown that he is barred from deportation under 8 U.S.C. § 1253(h), I think that on the record before us, Cruz-Lopez has demonstrated a well-founded fear of persecution, rendering him eligible for a grant of asylum in the discretion of the Attorney General as authorized by 8 U.S.C. § 1158(a).

As the majority opinion states most of our sister circuits have held that the "well-founded fear of persecution" test of § 1158(a) is more lenient than the "clear probability of persecution" test of § 1253(h). Although the correctness of this holding will be shortly examined by the Supreme Court, *Cardoza-Fonseca v. INS*, cert. granted, —— U.S. ——, 106 S.Ct. 1181,

89 L.Ed.2d 298 (1986), it is the rule that I would apply absent contrary directions from the Supreme Court.[*] Cruz-Lopez has demonstrated, in my view, both a genuine subjective fear, as the immigration judge found, and an objective basis sufficient to render this fear reasonable. *Cardozo-Fonseca v. INS*, 767 F.2d 1448, 1453 (9 Cir.1985); *Carvajal-Munoz v. INS*, 743 F.2d 562, 574–75 (7 Cir.1984); *see also Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1283 (9 Cir.1985).

With regard to the subjective elements of the well-founded fear test, it is undisputed that petitioner fled El Salvador because of fear generated by a specific threat from an organized guerilla faction, the Bloque Popular Revolucionario. The general level of political violence attending the Salvadoran civil war renders the threat both credible and serious, as does the fact that one of petitioner's closest friends and neighbors was killed after a similar threat. I would also attach greater significance than does the majority to petitioner's affiliation with the Oscar Romero Committee, which has fallen into increasing official disfavor. Although Cruz-Lopez has discontinued his association with the organization, his family is closely associated with the group through his uncle, Napoleon Lopez, a well-known activist, whose family in El Salvador has been persecuted on his account. While the government has issued no specific threats against petitioner, its history of persecuting intimates of Napoleon Lopez indicates that petitioner's risk upon repatriation would exceed that of the general population. This reasonable apprehension of governmental persecution based on kinship to Napoleon Lopez or participation in the anti-government Oscar Romero Committee qualifies petitioner for discretionary asylum.

The Immigration and Nationality Act calls upon us to deal in questions of proba-

---

**6.** After substantial questioning at oral argument, petitioner's counsel defined Cruz-Lopez's preferred period as "at least one year." Counsel offered no reason for this choice of a voluntary departure period.

*** In the alternative I would be willing to stay decision in this case until the Supreme Court decides *Cardoza-Fonseca*.

bility. Certainty is not possible, but certainty is not required. In view of the specific, credible threat directed at petitioner, I conclude that he has demonstrated a well-founded fear of persecution. Accordingly, I would remand the case in order to permit the Attorney General to exercise his discretion.