79 F.3d 1152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria Del Carmen De Gonzalez; Erick Javier Gonzalez;
Claudia Rosina Gonzalez, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 94-70538.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 8, 1996.*
Decided March 14, 1996.
 
 1
 Before: PREGERSON, T.G. NELSON, Circuit Judges and EXRA,** District Judge.
 
 
 2
 MEMORANDUM***
 
 BACKGROUND
 
 3
 Petitioner Maria del Carmen de Gonzalez and her children, Erick Javier Gonzalez and Claudia Rosina Gonzalez,[1] petition for review of a decision by the Board of Immigration Appeals ("BIA"). The BIA denied de Gonzalez's applications for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) and 1253(h). The BIA also granted de Gonzalez voluntary departure under INA section 244(3), 8 U.S.C. § 1254(e). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). We deny the petition.
 
 ANALYSIS
 
 4
 The BIA affirmed the IJ's decision "based upon and for the reasons set forth in that decision." (AR at 2.) Because the BIA incorporated the IJ's decision, we first review that decision. Alaelua v. INS, 45 F.3d 1379, 1391-92 (9th Cir.1995). The IJ concluded that (1) de Gonzalez had presented "no evidence of past persecution" and (2) that she had not presented evidence that would lead a reasonable person to conclude that they would be subject to future persecution. (AR at 26.) We will uphold these two factual findings if they are supported by substantial evidence. Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).
 
 
 5
 De Gonzalez testified that she was persecuted by two groups affiliated with the Sandinista government, ALLIED (the women's organization) and the CDS (the block organization). These two groups "pressured," "disturbed," and "bothered" her because she refused to cooperate with them. De Gonzalez's son Refugio was expelled from school because he refused to join Sandinista organizations. The family's food ration card was taken away. Refugio was detained for military service at age fifteen although, by law, military service was not required until age seventeen. Refugio apparently was able to avoid military service for a time, but de Gonzalez finally told him that he would have to join the military so that the family would be left alone. In 1985, when he was seventeen, he did so. (Administrative Record ("AR") at 35-37.)
 
 
 6
 From 1985 to 1986, de Gonzalez had no news of Refugio. She finally agreed to cooperate with the CDS and let them use her home for meetings in hopes of getting news of her son and getting back the family's food ration card. De Gonzalez attended some meetings where Sandinista authorities questioned her about her refusal to cooperate with these groups and her friendships with members of the former government and its political party. (AR at 37-41.) De Gonzalez expressed her political neutrality to the Sandinista authorities, stating that she "was neither for one side or the other side." (AR at 39.) They threatened to arrest her. (AR at 41.)
 
 
 7
 After Refugio completed his military service, he was not released from duty but remained on call to perform "special assignments." The family then decided to leave Nicaragua. (AR at 39.)
 
 
 8
 De Gonzalez fears to return to Nicaragua because the Sandinistas remain in positions of power.[2] She believes she would be incarcerated because her son deserted the army; even though Refugio had apparently completed his term of service, he remained on call for special military missions and thus would be considered a deserter for leaving the country. De Gonzalez also fears for the safety of her children. (AR at 39-40.) De Gonzalez stated that, if she could "be sure that the communists are completely out of Nicaragua," then she would no longer be fearful of returning. (AR at 41.)
 
 
 9
 The IJ denied de Gonzalez's applications for asylum and withholding of deportation but granted her voluntary departure. The IJ stated that there was "no evidence of past persecution of [de] Gonzalez or members of her family, nor is there evidence from which I believe a reasonable person would conclude that they would be the subject of [future] persecution" on account of race, religion, nationality, political opinion, or a particular social group. (AR at 26.) The IJ stated that he had "no reason to disbelieve" de Gonzalez's testimony, thus finding her testimony credible. (AR at 25.)
 
 
 10
 The IJ's finding that de Gonzalez had not presented evidence of a well-founded fear of future persecution on account of race, religion, nationality, political opinion, or membership in a particular social group is not supported by substantial evidence. Political neutrality, if sufficiently articulated, may constitute a political opinion. Ramos-Vasquez v. INS, 57 F.3d 857, 863 (9th Cir.1995). De Gonzalez expressed her neutrality directly to Sandinista authorities. These authorities constantly harassed her and eventually threatened to arrest her. An arrest threat is an individualized threat of persecution. See Mendez-Efrain v. INS, 813 F.2d 279, 282 (9th Cir.1987). In such circumstances, a reasonable person could conclude that she was subject to future persecution on account of her political opinion.
 
 
 11
 We next examine the additional grounds cited by the BIA for concluding that de Gonzalez did not qualify for asylum. First, the BIA found that the record did not "support[ ] a finding that the respondents were persecuted in the past." (AR at 3.) The BIA failed, however, to discuss whether de Gonzalez had established a well-founded fear of persecution. Although the harassment of de Gonzalez by political groups may not have risen to the level of actual persecution, this is not required. See Del Valle v. INS, 776 F.2d 1407, 1412 (9th Cir.1985) (holding that an asylum applicant need not have suffered actual persecution); Aguilera-Cota v. INS, 914 F.2d 1375, 1383 (9th Cir.1990) (holding that a threat of persecution can be sufficient to establish a well-founded fear of persecution). We conclude that de Gonzalez initially established a well-founded fear of future persecution because she was personally threatened with arrest. See Aguilera-Cota, 914 F.2d at 1383; Arteaga v. INS, 836 F.2d 1227, 1233 (9th Cir.1988).
 
 
 12
 Second, the BIA examined changed circumstances in Nicaragua. The BIA may take administrative notice of such changed circumstances in an applicant's home country and of the effect of those changes on the applicant's fear of persecution, provided the applicant is given an opportunity to respond. Acewicz v. INS, 984 F.2d 1056, 1060-61 (9th Cir.1993). Here, de Gonzalez herself brought up Nicaragua's change in government in her appeal to the BIA. She asserted that the Sandinistas remain in positions of power, although they no longer control the presidency of Nicaragua. (AR at 12.) The BIA reasoned that de Gonzalez had not provided evidence that the Sandinistas, after Chamorro's election, had harmed anyone in circumstances similar to hers. The BIA thus concluded that the record did not support a finding that de Gonzalez had a well-founded fear of future persecution by the Sandinistas should she return to Nicaragua. (AR at 3.)
 
 
 13
 We affirm this conclusion because it is supported by substantial evidence. De Gonzalez has failed to show that, on the record before us, her fear of persecution remains well-founded despite the change in government. She has submitted no evidence, other than statements in her brief to the BIA, that the Sandinistas remain in positions of power and that her fear of persecution thus remains well-founded. The asylum applicant bears the burden of demonstrating asylum eligibility. 8 C.F.R. § 208.13(a). Because de Gonzalez fails to meet the standard for asylum, she also fails to meet the higher standard for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 449-50 (1987). We thus affirm the BIA's denial of asylum and withholding of deportation. We also affirm the BIA's grant of voluntary departure.
 
 
 14
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Claudia and Erick, now nineteen and eighteen respectively, were minors at the time they filed their applications and thus are included in de Gonzalex's application; their eligibility for relief is contingent on hers. De Gonzalez's son Refugio has applied for asylum separately
 
 
 [2]
 Violeta Chamorro, an opponent of the Sandinistas, was elected President of Nicaragua on Feb. 25, 1990, about two weeks before de Gonzalex's deportation hearing. The IJ did not cite changed country conditions as a reason for denying de Gonzalez asylum and withholding of deportation