**Indiana Florentina RODRIGUEZ–MATA-MOROS; Elvia Antonieta Rodriguez; Rosario Elisay Rodriguez, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–70926.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1996.

Decided June 17, 1996.

Walter Rafael Pineda and Charles E. Nichol, San Francisco, California, for petitioners.

Elizabeth A. Welsh, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for respondent.

Before ALARCON, BEEZER and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Indiana Rodriguez–Matamoros and her two minor daughters, natives and citizens of Nicaragua, petition for review of the decision of the Board of Immigration Appeals (BIA), denying their applications for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a), 1253(h).[1] We have jurisdiction under 8 U.S.C. § 1105a(a). We conclude that Rodriguez has demonstrated past persecution and remand to the BIA for a determination of whether she is entitled to asylum as a matter of discretion.

I

The Immigration Judge (IJ) found that Rodriguez testified credibly, and the BIA made no findings of its own. Therefore the following is taken as true. Rodriguez and her family were supporters of former Nicaraguan President Anastasio Somoza. Two of Rodriguez's sisters were members of Somoza's National Guard and two other sisters worked for the Somoza government. In 1979, Sandinistas came to the Rodriguez home and dragged one of Rodriguez's sisters, Candida, a member of the National Guard, out of bed. The Sandinistas took her away from the house and tortured her. Candida managed to escape temporarily, but the Sandinistas pursued her back to the house, where they shot and killed her in front of Rodriguez and other members of the family. After killing Candida, the Sandinistas threatened to set the house on fire and burn the

---

**1.** The asylum and withholding of deportation claims of the daughters are derivative of Rodriguez's claims. *See* 8 C.F.R. § 208.3(a).

family alive. The Sandinistas were prevented from carrying out this threat only because neighbors intervened.

Subsequently, Rodriguez was denied food rations and a work permit because of her refusal to participate in Sandinista organizations. After imprisoning her for continuing to work without a permit, the Sandinistas told her that they would allow her to work only if she agreed to become an informant for the Sandinista government. Rodriguez refused and, after a few days, was released from prison. When Rodriguez returned home, Sandinista mobs broke into her house, painted pro-Sandinista slogans on the walls, and beat her and one of her sisters. Rodriguez's beating was so severe that her face remains scarred.

In 1989, Rodriguez and her two daughters fled Nicaragua and entered the United States without inspection. One of her sisters is a United States citizen and another has been granted asylum here. A third sister remains in Nicaragua. At her deportation hearing, Rodriguez admitted the factual allegations of the Order to Show Cause and conceded deportability. She applied for asylum and withholding of deportation and, in the alternative, for voluntary departure. The IJ denied the applications for asylum and withholding of deportation, but granted the application for voluntary departure. The BIA affirmed, and Rodriguez timely seeks review.

## II

The Attorney General has discretion to grant asylum to an applicant who is unwilling to return to her native country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion. *See* 8 U.S.C. §§ 1158(a), 1101(a)(42)(A); *Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir.1993). "Eligibility for asylum may be based on past

persecution alone." *Acewicz*, 984 F.2d at 1062 (citation omitted).

We review the BIA's determination of eligibility for substantial evidence, *Del Valle v. INS*, 776 F.2d 1407, 1412 (9th Cir. 1985), reversing "only if the evidence presented to the Board was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution," *Abedini v. INS*, 971 F.2d 188, 191 (9th Cir.1992) (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 816–17, 117 L.Ed.2d 38 (1992)). We review the decision to grant or deny asylum for abuse of discretion. *Del Valle*, 776 F.2d at 1412. "Although we have required the Board to provide more than mere conclusory statements, all that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." *Villanueva–Franco v. INS*, 802 F.2d 327, 330 (9th Cir.1986) (internal citations and quotations omitted).

## III

Rodriguez contends that she was subjected to past persecution and we agree.[2] Rodriguez credibly testified that she was severely beaten; that her home was vandalized; that she and her family were threatened with being burned alive; and that her sister was tortured, then killed in her presence. All of this happened on account of Rodriguez's political beliefs and those of her family. Under the circumstances, we are convinced that any reasonable factfinder would conclude that Rodriguez was subjected to past persecution.

## IV

The past persecution that Rodriguez has endured makes her *eligible* for asylum; the next question is whether she is *entitled* to asylum as a matter of discretion. *Kazlauskas*, 46 F.3d at 905 (footnote and citations omitted). "In determining whether

---

2. Rodriguez also contends that she has a well-founded fear of future persecution, but we agree with the BIA that, in light of the changed political climate in Nicaragua, she does not. *See Acewicz*, 984 F.2d at 1060–61 (upholding BIA's decision to deny asylum to Polish petitioners in

light of changes in Poland's political climate). It follows that Rodriguez necessarily fails to meet the more stringent test for withholding of deportation. *Kazlauskas v. INS*, 46 F.3d 902, 907 (9th Cir.1995) (citation omitted).

to grant asylum as a discretionary matter, the likelihood of future persecution is a particularly important factor to consider." *Id.* at 906 (citing *Matter of Pula*, 19 I & N Dec. 467, 474 (1987)). It is not the only factor, however. As the BIA held in *Matter of Chen*, humanitarian reasons may also influence the favorable exercise of discretion in some cases. *Matter of Chen*, Int. Dec. 3104 at 3 (BIA 1989). It explained:

> [W]hile the likelihood of future persecution is a factor to consider in exercising discretion in cases where an asylum application is based on past persecution, asylum may in some situations be granted where there is little threat of future persecution. Moreover, as with any case involving the exercise of discretion, all other factors, both favorable and adverse, should also be considered, with recognition of the special considerations present in asylum cases.

*Id.* (citation omitted).

The significance of *Chen* isn't entirely clear to us. While the BIA cited *Chen* in this case and concluded that "[e]ven if past persecution had been established in the instant case, we would not conclude from our independent review of the record that there are humanitarian or compelling bases that presently warrant a grant of asylum," we have no idea what factors the BIA considered or relied upon. As we have previously noted, "[i]n order for this court to properly review the Board's determination, 'we must understand the basis for its decision and how it arrived at the findings underlying that decision.'" *Castro–O'Ryan v. INS*, 847 F.2d 1307, 1314 (9th Cir.1987) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). This is particularly so in *Chen* cases, because in *Chen* itself, the BIA acknowledged that it was not "attempt[ing] at this time to delineate the circumstances under which past persecution may or may not be the basis for a successful asylum claim." *Matter of Chen*, Int. Dec. at 5.

At a minimum, the BIA must provide an explanation "sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." *Villanueva–Franco*, 802 F.2d at 330 (citation omitted). The BIA's failure to do so here constitutes an abuse of discretion. Accordingly, we remand for a determination by the BIA of whether Rodriguez's past persecution warrants a grant of asylum.

PETITION GRANTED.