Marie Rose **PIERRE,** Plaintiff-Appellee,

v.

Perry **RIVKIND, District Director, Immigration & Naturalization Service, District 6,** Defendant-Appellant.

No. 86–5389.

United States Court of Appeals, Eleventh Circuit.

Aug. 27, 1987.

---

Leon B. Kellner, U.S. Atty., Miami, Fla., Linda S. Wendtland, Dept. of Justice/Civil Div., Allen W. Hausman, Donald A. Couvillon, Washington, D.C., for defendant-appellant.

Niels W. Frenzen, Haitian Refugee Center, Inc., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, Senior District Judge.

TJOFLAT, Circuit Judge:

### I.

Marie Rose Pierre, a Haitian national, illegally attempted to enter the United States without first obtaining a visa. She was arrested and detained by the Immigration and Naturalization Service (INS) pending the resolution of exclusion proceedings. While Pierre was in detention, she applied for a grant of political asylum which, under INS regulations, is also considered as an application for withholding of deportation. See 8 C.F.R. § 208.3(b) (1987). INS held an evidentiary hearing before its administrative tribunal, the Immigration Court. After receiving testimony from Pierre and written evidence, the Immigration Court found that she had failed to make a prima facie case for either form of relief. The Bureau of Immigration Appeals (BIA) upheld the decision of the Immigration Court.

Having exhausted her administrative remedies, Pierre filed a petition for a writ of habeas corpus in the district court under 28 U.S.C. § 2241 (1982), which is the sole method of judicial review of exclusion decisions. 8 U.S.C. § 1105a(b) (1982). Pierre's petition challenged the Immigration Court's jurisdiction to hold exclusion proceedings, the admissibility and weight it gave to a report from the State Department's Bureau of Human Rights and Humanitarian Affairs (BHRHA) adverse to her claim for political asylum, an order denying her discovery, and the Immigration Court's findings that she had failed to prove a prima facie case for administrative relief. The district court reviewed the administrative record and found that the decisions of the Immigration Court and of the BIA were not supported by substantial evidence. The court then made its own findings, concluding that "the evidence of record demonstrates the likelihood that she will be persecuted upon return to Haiti," and that "the BIA's finding that petitioner failed to establish a *prima facie* asylum claim is arbitrary and capricious." The court upheld the jurisdiction of INS to hold the exclusion proceedings and the Immigration Court's denial of discovery, but ordered the agency to strike the BHRHA report from the record because it did not reveal a factual basis for the State Department's conclusion. Finally, the order reversed the BIA's decision denying political asylum because it was based upon a

> disregard of the great weight of the evidence presented by Petitioner, combined with the mischaracterization of other portions of it [which] effectively imposed a burden of proof on petitioner that could only have been met had she waited in Haiti until ... threats of persecution were actually carried out against her.

The court remanded the case to INS with instructions "to reconsider petitioner's application for asylum in conformity with the findings herein." 643 F.Supp. 669. INS appeals the district court's decision.

### II.

#### A.

We first face a question regarding our jurisdiction over this proceeding. Pierre

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

has filed a motion to dismiss this appeal, arguing that the district court's order is not final and appealable, because it merely remanded the cause to INS for further action. We disagree.

■ INS, under authority delegated to it by the Attorney General, may, in its discretion, grant an alien asylum because of persecution or a well-founded fear of persecution on account of one or more factors listed in 8 U.S.C. § 1101(a)(42) (1982) (e.g., race, religion, or political opinion). *INS v. Cardoza-Fonseca,* —— U.S. ——, ——, 107 S.Ct. 1207, 1209, 94 L.Ed.2d 434 (1987); 8 U.S.C. § 1158(a) (1982). Although the class of eligible aliens is broad, the decision whether to grant relief is wholly discretionary; no alien has a claim of right or entitlement to asylum. *See Cardoza-Fonseca,* —— U.S. at —— n. 5, 107 S.Ct. at 1211 n. 5. INS has no discretion, however, to deny relief to those aliens who can show that it is more likely than not that they would be subject to persecution (i.e., their lives or freedom would be threatened), on account of one or more factors listed in 8 U.S.C. § 1253(h) (1982), in the country to which they would be returned. INS must withhold deportation of aliens who can meet this greater burden of proof. *INS v. Cardoza-Fonseca,* —— U.S. at —— – ——, 107 S.Ct. at 1208–09; 8 U.S.C. § 1253(h) (1982).

Pierre argues that the district court's order of remand cannot be final, because INS retains the discretion whether to grant asylum. INS argues that the order is final because the district court ordered reconsideration of the claim of asylum "in conformity with" its findings, which include a finding that "the evidence of record demonstrates the likelihood that she will be persecuted upon return to Haiti." According to INS, the district court's order effectively mandates that it grant Pierre relief.

■ Admittedly, the district court's opinion is silent as to Pierre's claim for withholding of deportation, and the two forms of administrative relief are not identical. Asylum affords an alien broader benefits, including an opportunity to apply for an adjustment of status from a refugee to a permanent resident. *Cardoza-Fonseca,* —— U.S. at —— n. 6, 107 S.Ct. at 1211 n. 6. The withholding of deportation, on the other hand, merely prevents the alien from being deported to the specific country or countries in which he would be persecuted; if INS can find a hospitable country, it may deport him. *Id.* Nevertheless, once an alien has received relief from custody or detention, the finality of that determination is not destroyed by a distinction of the relief granted. The writ of habeas corpus extends only to custody and detention; it cannot address collateral or ancillary forms of administrative relief. *Pierre v. United States,* 525 F.2d 933, 935–36 (5th Cir.1976).[1] We conclude that the district court's order is final because it grants the petitioner all of the relief that the court was empowered to grant and leaves INS nothing to perform other than the ministerial act of ordering the petitioner's deportation withheld. *See Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 68, 68 S.Ct. 972, 976, 92 L.Ed. 1212 (1948). The order is thus reviewable as a final order of a district court, 28 U.S.C. § 1291 (1982), and as a final order in a habeas corpus proceeding, 28 U.S.C. § 2253 (1982).

### B.

On the merits, INS argues that the BIA's decision that Pierre had failed to prove a prima facie case for either form of relief was supported by substantial competent evidence. We agree.

Pierre supported her claim for political asylum with testimony concerning a dispute over a mule that arose between her father and a chief of the Tonton Macoute, a Haitian security force. According to Pierre, the chief asked her father to lend

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

him the family mule. When her father refused to lend the mule, the chief took it from him anyway, and in retribution for the refused loan, intentionally worked the mule to death. When Pierre's father confronted the chief about the taking and killing of his mule, the chief told him that if he did not let the matter rest he would "break" him, and if he could not "break" him, he would "break" his children. Pierre's father then realized that he could do no good by complaining any further and decided to abandon the dispute. He had no more conflicts with the chief, but fearing reprisal, he arranged to have his daughter sail from Haiti to the United States.

The Immigration Court and the BIA concluded that the confrontation over the mule was personal in nature and did not rise to a level of a dispute over a "political opinion," which was necessary to establish her claim to either form of relief. The district court found that this conclusion could not be sustained, because it was not supported by substantial evidence. Our review of the administrative record and of the district court's opinion convinces us that although the district court correctly stated the standard of review, it misapplied that standard.

 The district court held that the conclusion that the dispute over the mule was personal rather than political ignored "the realities of Haiti's past oppressive system" and that "[b]ecause the threats were made to the entire family, the evidence of record demonstrates the likelihood that she will be persecuted upon return to Haiti." The court did not refer to any evidence in the administrative record in support of its finding, but cited that court's opinion in an unrelated case that found that the Tonton Macoute was a security force whose individual members had the power arbitrarily to determine who were enemies of the Haitian government. *See Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442, 498–500 (S.D.Fla.1980), *aff'd as modified, Hai-*

*tian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir.Unit B 1982),[2] *overruled on other grounds, Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984) (en banc), *aff'd*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). INS complains that the district court erred in going outside of the administrative record to rely on findings that the former Fifth Circuit treated as dictum, *Haitian Refugee Center v. Smith*, 676 F.2d at 1042. INS also contends that the district court aggravated the error by applying collateral estoppel against the Government. We not only agree that the district court erred in applying nonmutual offensive collateral estoppel against the Government, *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984), but also agree that regardless of any power that the Tonton Macoute may enjoy in Haiti, Pierre has failed to provide any evidence that there currently exists any dispute, political or otherwise, between her family and the "chief."

As noted by the BIA, Pierre did not testify that her father persisted with his complaints or did anything else to further Tonton Macoute interest in her family. Given that gap in the evidence, she could not, on the testimony given, establish either that her fear of persecution was "well-founded" or that she was "likely to be persecuted." The substantial evidence in the record therefore shows that she is not entitled to relief. We further note that there is nothing in the record to support the district court's conclusion that the BIA disregarded the weight of the evidence, mischaracterized "many other parts of it," or imposed an improper burden of proof on Pierre. Any deviation among the interpretations of the testimony given by the Immigration Court, the BIA, and the district court addressed issues that were of no consequence to the final decision.

 INS also complains that the district court erred in ordering it to strike the

---

**2.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former

Fifth Circuit handed down after September 30, 1981.

BHRHA report from the record because the report failed to reveal a factual basis for the BHRHA's conclusion that Pierre had no valid claim to political asylum. INS contends that the district court further erred in broadly cautioning INS to give those reports "little, if any weight," even though 8 C.F.R. § 208.10(b) (1987) mandates the inclusion of those reports, and even though the court observed that "[t]he immigration judge did not suggest that the letter was given any weight; he merely included it in the record as the regulations mandate." In the absence of even an inference that the immigration judge did anything other than harmlessly comply with regulations, the order must be reversed.[3]

### III.

We hold that the district court's order remanding this case is a final and appealable order. Furthermore, we conclude that the district court erred in finding that the decisions of the Immigration Court and the BIA were not supported by substantial evidence.

REVERSED.

---

**3.** We note that INS and the district court both proceeded in this action under the assumption that an applicant for asylum, like an applicant for withholding of deportation, bears the burden of proving that his/her persecution upon return to his/her homeland is "more likely than not." While this appeal was pending, the Supreme Court resolved a conflict among the circuits on this issue. The Court determined that the Attorney General, in his discretion, may grant an alien's application for asylum upon proof of "persecution or a well-founded fear of persecution," without the alien meeting an additional burden of proving that it is "more likely than not" that his/her fear will be realized. *INS v. Cardoza-Fonseca,* — U.S. ——, ——, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987). Given that we agree with the BIA that substantial evidence shows that Pierre's fear is not "well-founded" and, moreover, that citations in Pierre's brief reveal that she was aware of the pendency of *Cardoza-Fonseca* in the Supreme Court but filed no cross-appeal, we see no reason to remand the case for further consideration in light of that opinion. *See Campbell v. Wainwright,* 726 F.2d 702, 704 (11th Cir.1984) (appellee who has failed to cross-appeal may not attack a decree to enlarge his own rights thereunder or attack the rights of his adversary).