Morteza Seyed **TARVAND**, Petitioner,

v.

**U.S. IMMIGRATION & NATURALIZATION SERVICE**, Respondent.

No. 90–3078.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1991.

Decided June 26, 1991.

Palma R. Yanni, Law Offices of Jan M. Pederson, P.C., argued (Michael A. Fracassi, Law Offices of Michael A. Fracassi, P.C., on brief), Washington, D.C., for petitioner.

Donald Anthony Couvillon, Civ. Div., U.S. Dept. of Justice, argued (Stuart M. Gerson, Asst. Atty. Gen., Richard M. Evans, Asst. Director, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, on brief), Washington, D.C., for respondent.

Before PHILLIPS and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Morteza Sayed Tarvand appeals the final order of the Board of Immigration Appeals (BIA) denying his applications for voluntary departure, withholding of deportation, and asylum. We find that the decision to deny withholding of deportation is supported by substantial evidence and that the decision to deny voluntary departure is not an abuse of discretion. We remand the application for asylum for reconsideration under the standard prescribed in *Matter of Mogharrabi*, 19 I. & N.Dec. 439, 445 (1987).

I

Tarvand, a citizen of Iran, first entered the United States in 1974 on a visitor's visa. When he failed to depart by the expiration of his period of admission, Tarvand was found deportable and ordered to depart voluntarily by February 20, 1976. Tarvand did not depart for Canada until March 8, 1976. In Canada, Tarvand joined the Iranian Student Association, circulated leaflets, and participated in demonstrations. Once he had obtained a United States student visa, Tarvand returned to attend school in Alabama, where he continued his membership in a branch of the same Iranian student organization.

In 1978 or 1979, Tarvand returned to Teheran, Iran. He ran a TV shop, taught classes, and continued to participate in the same student group, which was known in Iran as the "Masses of the Student Revolutionary Organization." Tarvand helped the group disseminate information and let them meet in his shop. The organization,

which initially supported the Ayatollah Khomeini, later fell into disfavor with the Khomeini government and disbanded. The group held one of its last meetings at Tarvand's TV shop, although Tarvand did not attend. During the meeting, the Revolutionary Guard raided the shop and arrested two students. The authorities returned the next day and closed the shop. When Tarvand returned to his shop, the building owner informed him of the raid. A student present at the meeting told Tarvand that the Revolutionary Guard had inquired about him and had obtained his name. Fearing arrest, Tarvand left his shop and hid until late October or early November 1982, when he crossed secretly into Pakistan.

Tarvand left Pakistan for Spain, where he applied for another student visa to the United States. When the consul rejected his application, he traveled to Mexico, where he successfully reapplied for a student visa and entered the United States on June 4, 1983. Although his visa expired in August 1984, Tarvand remained in the United States and married an American citizen, from whom he separated after living together for about two weeks.

## II

In March 1985, the INS charged Tarvand with being deportable under Section 241(a)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(2). At the deportation hearing in July 1985, Tarvand conceded deportability and requested asylum, pursuant to 8 U.S.C. §§ 1101(a)(42)(A), 1158(a), withholding of deportation, pursuant to 8 U.S.C. § 1253(h), or voluntary departure, pursuant to 8 U.S.C. § 1254(e)(1). In support of his application, Tarvand offered his own testimony, two statements by others in support of his testimony, and background material written by Amnesty International, documenting the killing, torture, and gross human rights violations that occur in Iran. The immigration judge denied Tarvand's application, and the BIA affirmed.

Tarvand, represented by new counsel, filed a timely petition for review in this court seeking reversal of the denial of withholding of deportation and voluntary departure. He seeks a remand to have his asylum application considered under the proper standard.

## III

In deportation proceedings, we review credibility and factual findings under the substantial evidence standard but subject mixed questions of law and fact to *de novo* review. *Figeroa v. INS*, 886 F.2d 76, 78 (4th Cir.1989). We review the BIA's decision on a request for withholding of deportation under the substantial evidence standard. *Campos–Guardado v. INS*, 809 F.2d 285, 289 (5th Cir.1987). We review the denial of voluntary departure for an abuse of discretion. *Cruz–Lopez v. INS*, 802 F.2d 1518, 1522–23 (4th Cir.1986).

In order to establish eligibility for withholding of deportation, an alien must show a "clear probability of persecution" in a designated country, based on one of the five grounds enumerated in 8 U.S.C. § 1253(h)(1). *INS v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). As the Supreme Court noted, "[A]n application [for relief must] be supported by evidence establishing that it is *more likely than not* that the alien would be subject to persecution...." 467 U.S. at 429–30, 104 S.Ct. at 2501 (emphasis added). Both the BIA and the immigration judge noted that Tarvand's application lacked such evidence. They pointed out that Tarvand's testimony about his activities in the Iranian Student Association lacked sufficient detail and that Tarvand did not provide enough corroborating evidence. We therefore affirm the denial of withholding of deportation as supported by substantial evidence.

In denying Tarvand's application for voluntary departure, the immigration judge considered and discussed Tarvand's negative immigration history: his past deportation proceedings, his travels from Spain to Mexico to obtain a student visa, and his suspiciously-timed marriage to a U.S. citizen. On appeal, the BIA held that on this

record, the denial of voluntary departure did not constitute an abuse of discretion. In light of these adverse factors, we find no abuse of discretion in the decision to deny voluntary departure, and we affirm.

## IV

■ If an alien can demonstrate that he is a "refugee" with a "well-founded fear of persecution," the Attorney General has the discretion to grant the alien asylum. 8 U.S.C. § 1158(a) (1988). Although Section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42), defines the term "refugee," the statute does not define the phrase "well-founded fear of persecution."

Citing a long line of BIA cases, the immigration judge reasoned: "As recently noted by the Board of Immigration Appeals ... the standards for asylum and withholding of deportation are not meaningfully different and, in practical application, converge. This has long been the consistent finding of the Board of Immigration Appeals." (citations omitted) To avoid dismissal of his asylum application Tarvand had to furnish evidence sufficient to support his withholding of deportation claim. He had to establish a clear probability of persecution, supported by evidence that it was more likely than not that he would be persecuted if he returned to Iran. Because he did not satisfy this requirement, the immigration judge ruled that he had not shown a well-founded fear of persecution and dismissed his application for asylum.

While Tarvand's appeal was pending before the BIA, the Supreme Court specifically rejected the standard for asylum that the immigration judge employed. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Although the INS argued in *Cardoza–Fonseca* "that the only way an applicant can demonstrate a 'well-founded fear of persecution' is to prove a 'clear probability of persecution,'" 480 U.S. at 430, 107 S.Ct. at 1212, the Court disagreed. It observed that "the fact that Congress has prescribed two different standards in the same Act certainly implies that it intended them to have significantly different meanings." 480 U.S. at 448 n. 31,

107 S.Ct. at 1222 n. 31. The Court contrasted the well-founded fear standard with the more stringent clear probability standard, stating that "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." 480 U.S. at 431, 107 S.Ct. at 1213. As the Court emphasized, "a moderate interpretation of the 'wellfounded fear' standard would indicate 'that so long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility.'" 480 U.S. at 440, 107 S.Ct. at 1217 (citation omitted).

It is readily apparent that Tarvand's application for asylum was evaluated under the wrong standard. As the INS notes on page 10 of its brief, the wrong standard is stricter than the standard *Cardoza–Fonseca* prescribes. *See also Cruz–Lopez,* 802 F.2d at 1522 (dictum). But the question remains whether Tarvand is entitled to the remand that he seeks.

## V

The INS asserts that we should reject Tarvand's claim for reconsideration of the denial of asylum because he failed to exhaust his administrative remedies. Tarvand's present attorney contends that the asylum question was before the BIA on certification.

Tarvand's former attorney filed the appeal to the BIA one day late. He did not submit a brief, although he was granted an extension of time to file one. He requested oral argument, which the BIA denied. Furthermore, Tarvand's former counsel did not explicitly raise the asylum issue. Instead he contended that the denial of voluntary departure was an abuse of discretion and that the denial of withholding of deportation was contrary to evidence that showed a clear probability of persecution if Tarvand was returned to Iran.

The INS moved to dismiss the appeal because it was untimely. It nevertheless fully briefed the asylum issue, urging once

again that the standards for withholding of deportation and for asylum were the same. The INS did not request the BIA to deny the asylum claim on the ground that the notice of appeal was deficient.

Although the BIA's opinion acknowledged that Tarvand applied for asylum, it did not address this issue. Confining its discussion to the issues of withholding of deportation and voluntary departure, it affirmed the immigration judge's decision.

One need not condone the appellate deficiencies of Tarvand's former counsel to appreciate that there was a certain logic in the way he phrased the notice of appeal. At that time, everybody involved in the case—the immigration judge, counsel for both the INS and Tarvand, and the BIA—labored under the mistaken belief that the same standards governed asylum and withholding of deportation. Consequently, there was no need to argue the issue of asylum separately. If the evidence did not justify withholding of deportation, the application for asylum was doomed. If the evidence justified withholding of deportation, there was no need for Tarvand to press for asylum. As a practical matter, at the time the appeal was filed the asylum claim was effectively before the BIA. This relationship between the two issues was dissolved, however, when the Supreme Court in *Cardoza–Fonseca* held that the standards differed. This decision was announced while Tarvand's appeal was pending before the BIA. Nevertheless, the BIA did not correct the immigration judge's error.

Although for all practical purposes the asylum issue was subsumed in the withholding of deportation issue before the BIA, practicalities do not always carry the day. The INS is quite right in arguing that failure to exhaust administrative remedies precludes judicial review. 8 U.S.C. § 1105a(c); *Florez–De Solis v. INS*, 796 F.2d 330, 335 (9th Cir.1986). This brings us to the question whether procedurally, as well as practically, the asylum issue was before the BIA.

Because Tarvand's notice of appeal was untimely, the BIA assumed jurisdiction of the appeal by certification pursuant to 8 C.F.R. § 3.1(c). *See In Re Tarvand*, No. A26 856 042, at 1 n. 1 (BIA Feb. 7, 1990). When the BIA assumes jurisdiction by certification, it "may reach a meritorious question presented by an untimely or otherwise questionable appeal...." *Garcia v. Boldin*, 691 F.2d 1172, 1181 n. 17 (5th Cir. 1982). For example, in *Matter of Dacanay*, 16 I. & N.Dec. 238 (1977), an immigration judge found two aliens, a husband and a wife, deportable. Although only the husband appealed, the BIA assumed jurisdiction of the wife's case by certification, "[i]nasmuch as the Service and new counsel treat the appeal as though the wife had appealed also...." 16 I. & N.Dec. at 239.

Tarvand's application for asylum was practically and procedurally before the BIA through its exercise of certification. The INS treated asylum as an issue on appeal to the BIA and fully briefed it. Nevertheless, neither the BIA nor the immigration judge considered the application under the correct legal standard. When an alien's request for asylum has been erroneously evaluated by application of the standard for withholding of deportation, remand is appropriate. *See Doe v. INS*, 867 F.2d 285, 290–91 (6th Cir.1989); *Perez–Alvarez v. INS*, 857 F.2d 23, 24–25 (1st Cir.1988). We therefore remand Tarvand's asylum application for reconsideration in light of *Mogharrabi*, 19 I. & N.Dec. at 445, which, referring to *Cardoza–Fonseca*, holds: "[A]n applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution."

We express no opinion about the merits of Tarvand's asylum application.

AFFIRMED IN PART AND REMANDED.

NIEMEYER, Circuit Judge, dissenting:

I readily concur in Parts I through IV of the majority opinion, but I respectfully dissent from the findings contained in Part V and the order of remand. In Part V the majority opinion holds that because the Board of Immigration Appeals (BIA) re-

viewed the immigration judge's opinion under a certification process, "Tarvand's application for asylum was practically and procedurally before the BIA." It then concludes that the BIA considered the asylum issue under an incorrect standard and remands the issue for reconsideration in light of the correct legal standard.

While I take no issue with the legal standards so succinctly set out by the majority opinion on the varying proofs required for satisfying applications for asylum and for an order withholding deportation, I find that the record in this case shows that the asylum issue was not appealed to the BIA, that the BIA did not consider or rule on the asylum issue, and that it is not now before us. Moreover, if Tarvand had wished to appeal the asylum issue based on the Supreme Court's intervening decision in *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (establishing the differing standards of proof for an application of deportation (reasonable probability) and for asylum (a well-founded fear of an event happening, even when there is less than a fifty-percent chance of its happening)), he had every opportunity to do so but elected not to.

When deportation was initially sought by the INS, Tarvand applied for (1) asylum, (2) withholding of deportation, and alternatively, (3) voluntary departure. Because of the incredibility of much of Tarvand's evidence, his manipulation in obtaining a visa, and his ten-day marriage to a United States citizen, the immigration judge rejected all three requests and ordered Tarvand's deportation.

The record fully supports Tarvand's awareness of the separate forms of relief available to him, if by no other reason, by his specific application for each. Nevertheless, when the immigration judge denied each request, Tarvand appealed only two issues: (1) the denial of the request for voluntary departure, and (2) the denial of withholding of deportation. He took no issue with the rulings on his application for asylum.

The majority opinion suggests that he may not have appealed the asylum issue because proof of that issue was treated substantially the same as that for withholding deportation. While this supposition is belied by his careful delineation of the issues listed on his notice of appeal to the BIA, he nevertheless could have sought review of the asylum issue when he became aware that its standard of proof was different. While his appeal to the BIA was pending and even before a transcript of his hearing before the immigration judge was prepared, the Supreme Court decided *Cardoza–Fonseca*. That decision was filed on March 9, 1987. Over five months later, on August 11, 1987, Tarvand was sent a transcript of the proceedings before the immigration judge and advised that his brief on appeal was due on August 26, 1987. At that time he was free to raise the issue presented by the intervening Supreme Court case and urge a remand to the immigration judge in light of the decision. While he undertook to file two motions for extensions of time for filing his brief, he failed to file a brief on appeal and he never sought to review the asylum issue.

Counsel for the INS did file a brief on appeal which urged the correctness of the immigration judge's decision on the asylum issue and sought dismissal because the appeal was one day late. This brief was filed in 1986 well before the *Cardoza–Fonseca* opinion was decided. Even though the INS briefed the asylum issue, the BIA did not consider it. Choosing to by-pass the issue of Tarvand's one-day late notice of appeal, the BIA decided his issues on the merits. To avoid a jurisdictional problem, the BIA elected to conduct its review under a certification process. *See* 8 C.F.R. § 3.1(c). In discussing the merits the BIA stated explicitly that it was not reaching the asylum issue which Tarvand had failed to raise. After describing the three issues decided by the immigration judge, the BIA said:

> [T]he respondent has contested on appeal only the immigration judge's denial of his withholding of deportation and voluntary departure applications. *We will therefore review only the immigration judge's denial of the respondent's re-*

*quests for relief pursuant to sections 243(h) [withholding deportation] and 244(e) [voluntary departure] of the Act, 8 U.S.C. §§ 1253(h) and 1254(e), respectively.* (Emphasis added.)

Because the asylum issue was not appealed by Tarvand and was not considered by the BIA, we have no authority to consider it when reviewing the BIA's decision. *See Farrokhi v. INS,* 900 F.2d 697, 700 (4th Cir.1990) (by not raising a claim in an appeal to the BIA, an alien generally waives his right to raise it before a federal court). The facts in this case, both with respect to the merits and the procedural aspects, do not suggest an injustice that would justify our extraordinary departure from established principles of review to provide Tarvand this relief. Moreover, after the Supreme Court handed down *Cardoza–Fonseca,* Tarvand had sufficient time in which to raise and argue the asylum issue before the BIA. I would therefore affirm the BIA without ordering a remand.

I respectfully dissent.