**Kunden SINGH, Petitioner,**

v.

**The UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, et al., Respondents.**

**Civil No. PJM 95–2149.**

United States District Court, D. Maryland.

May 27, 1997.

Helen Morris, Catholic Legal Immigration Network, Washington, DC, for Plaintiff.

George W. Maugans, Special Assistant United States Attorney and William H. Hallock, Assistant District Counsel, U.S. Immigration & Naturalization, Baltimore, MD, for Defendants.

*OPINION*

MESSITTE, District Judge.

I.

Kunden Singh is being held at the Wicomico County Detention Center in Salisbury, Maryland, awaiting deportation from the United States after the Immigration and Naturalization Service (INS) found him excludable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (West Supp.1996).[1] He has filed a Petition for a Writ of Habeas Corpus in this Court. The Court referred the matter to Magistrate Judge William L. Connelly for a Report and Recommendation. Judge Connelly recommends that the Petition be denied. Having conducted a *de novo* review of the Petition pursuant to Fed.R.Civ.P. 72(b), *see also Camby v. Davis*, 718 F.2d 198, 199–200 (4th

---

**1.** On September 30, 1996, the President signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") Pub.L. No. 104–208, 11D Stat. 3009 (1996). The law amends the Immigration and Nationality Act, repealing § 1105a, and replaces it with a new judicial review provision now codified at 8 U.S.C. § 1252. Because the Petition in this case was filed before the effective date of the new law, the former provisions are deemed applicable. *See* IIRIRA §§ 306(c)(1), 309(a) (set out as notes under 8 U.S.C.A. § 1101 respectively).

Cir.1983), the Court agrees that the writ should be denied.

## II.

The procedural history of this case is undisputed. Singh left India and arrived at Washington–Dulles Airport on a Lufthansa Airlines flight from Germany on May 29, 1994. He presented no valid identification or travel documents and was denied entry into this country. Pending a hearing before an Immigration Judge (IJ), he was detained.

From the outset, Singh admitted that he was properly excludable, but asked the INS to grant him political asylum. As required by law, the INS treated his application as one for both asylum and for withholding of deportation. *See* 8 U.S.C. § 1253(h) and 8 C.F.R. § 208.3(b). At the close of the INS hearing, the IJ determined that Singh had failed to establish his entitlement to either asylum or the withholding of deportation and he was ordered excluded and deported from the United States.

Singh appealed the IJ's ruling to the Board of Immigration Appeals (BIA) which, on November 22, 1994, in a *de novo* opinion, denied the appeal. The Board concluded that any persecution Singh faced in India was not on account of any ground protected by the Immigration and Nationality Act. 8 U.S.C. 1101(a)(42)(A). Singh took no direct appeal from this final administrative order.

Since then the INS has made efforts to return Singh to India, but has been unable to obtain necessary travel documents from the Indian government. The effort of the INS to return Singh to Germany has likewise been unsuccessful. When sent to Germany in January, 1995[2], Singh left the sterile transit area of the airport and applied for asylum in Germany. Although the German authorities pursued his application, they ultimately denied it and returned him to the United States. He has remained in INS custody since his return.

On July 24, 1995, Singh filed his application for a writ of habeas corpus.[3]

## III.

At the time of his attempted entry, Singh was approximately 22 years of age. He is a native and citizen of India, a Sikh from the State of Punjab. He was never politically active there and experienced no difficulties with the Indian authorities prior to March, 1994. During that month, he was approached by eight armed individuals wearing turbans, apparently Sikh militants. He testified that he was forced, upon threat of death, to drive these men on a trip, then learned when he returned to his family home that his contact with these militants had come to the attention of the security forces. These forces had arrested his father and brother who were questioned about him. The father and brother were physically mistreated and not long after a bribe secured their release from custody, Singh's father died in the hospital.

Singh fled to relatives several hundred miles away and was arrested by security forces in late March and held for four days. He was questioned about the militants and beaten.[4] After he arranged for a bribe to obtain his release, he sought medical attention for his injuries. Singh testified that he

2. In exclusion cases, an alien ordered excluded is generally returned to the country in which he boarded the aircraft or vessel that brought him to the United States. 8 U.S.C. § 1227(a)(1).

3. Prior to the enactment of the IIRIRA, there was no time limit within which an alien had to file a petition for a writ of habeas corpus seeking judicial review from an administratively final order of exclusion. 8 U.S.C. § 1105(a)(9) (repealed). Under the new law, a petition for habeas review must be filed not later than 30 days after the date of the final order of removal. 8 U.S.C. § 1252(b)(1) and § (e)(2).

4. Throughout his pleadings before this Court, Singh claims he was detained and tortured by government authorities on *two* separate occasions. While it may well be that Singh's application for asylum indicates that he was arrested and detained twice, when asked at his hearing before the IJ how many times he was arrested, he replied, "Only once and that time we just told you about...." When his attorney attempted to clarify by asking regarding the "application [that] indicated you were arrested two times ... is that correct?", Singh replied, "Neither did I state that I was arrested twice nor was I arrested twice." Clearly both the IJ and the BIA were within their province to conclude that only *one* arrest and detention occurred.

knew of other Sikhs who had been abused as he had. In May, 1994, his family arranged for him to depart India.

#### IV.

Singh challenges the conclusion of the BIA that he is not eligible for asylum, arguing that the Indian authorities imputed a political opinion to him and punished him for that opinion. He also contends that he was not required to show country-wide persecution in view of the fact that the Indian government was the persecutor. Secondarily, he argues that he should be paroled from his current detention because its indefinite duration violates the Due Process Clause of the Constitution. The INS disputes these propositions.

The key threshold issue is what standard or standards of review should be applied.

■ Neither party suggests that a different standard applies when the challenge to a BIA decision asserted by way of habeas corpus as opposed to direct appeal, although arguably there may be a difference. *See Sarkis v. Nelson,* 585 F.Supp. 235 (E.D.N.Y. 1984), habeas corpus proceeding, 599 F.Supp. 724 (E.D.N.Y.1984). But assuming that the standard of review by way of habeas is the same as that on direct review, the parties still divide over what it is. Singh contends that because the IJ found that he was credible but ineligible for asylum and the BIA adopted that finding, only issues of law are involved. In support of his position, he cites *Tarvand v. INS,* 937 F.2d 973, 975 (4th Cir. 1991). The INS responds that the *de novo* standard of review does not apply, that the proper standard is the deferential "substantial evidence test." INS also cites *Tarvand,* as well as, among other cases, *Cruz–Lopez v. INS,* 802 F.2d 1518, 1519 n. 1 (4th Cir.1986).

The INS is correct. Singh miscites *Tarvand,* which states that "[i]n deportation proceedings, we [the appellate court] review credibility and factual findings under the substantial evidence standard but subject mixed questions of law and fact to *de novo* review." 937 F.2d at 975, citing *Figeroa v. INS,* 886 F.2d 76, 78 (4th Cir.1989). The court then specifically noted that "[w]e review the BIA's decision on a request for withholding of deportation under the substantial evidence standard." *Id.* *Huaman–Cornelio v. Board of Immigration Appeals,* 979 F.2d 995, 999 (4th Cir.1992), confirms the applicability of the substantial evidence test. Indeed, under *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), the reviewing court may reverse the BIA only if the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." 502 U.S. at 484, 112 S.Ct. at 817.

As for the due process claim pertaining to Singh's detention, the INS apparently does not dispute that the decision is subject to *de novo* review. *See Jean v. Nelson,* 727 F.2d 957, 962 (1984).

#### V.

■ The Immigration and Nationality Act creates two types of proceedings by which aliens may be removed from the United States. Deportation proceedings are used when aliens have already entered the United States and are sought to be removed. Exclusion proceedings are employed when the alien has not yet entered the country, but is detained in effect at the border. *See* 8 U.S.C. § 1226(a). Generally, an alien in deportation proceedings possesses greater substantive rights than one in exclusion proceedings. *See Landon v. Plasencia,* 459 U.S. 21, 24–27, 103 S.Ct. 321, 324–26, 74 L.Ed.2d 21 (1982).

■ An individual may obtain relief from a deportation or exclusion decision by seeking asylum pursuant to 8 U.S.C. § 1158 or withholding of deportation pursuant to 8 U.S.C. § 1253(h). An alien granted asylum may not be deported absent revocation of that status. While one as to whom deportation is withheld may not be deported to a specific country in which he would be persecuted, he may still be deported to some other country should one be found that will accept him. *See Pierre v. Rivkind,* 825 F.2d 1501, 1504 (11th Cir.1987).

■ With regard to asylum, the Attorney General is authorized, in her discretion, to confer the status upon any "refugee." 8 U.S.C. § 1158(a). A "refugee" is a person

unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also M.A. v. INS,* 899 F.2d 304, 307 (4th Cir.1990). The applicant for asylum bears the burden of demonstrating a well-founded fear that he would be singled out for persecution on account of one of the five indicated categories. *Huaman–Cornelio,* 979 F.2d at 999–1000. A "well-founded fear" consists of a genuine subjective fear of persecution and objective facts that support a reasonable possibility of persecution. *M.A. v. INS,* 899 F.2d at 311. An applicant for withholding of deportation bears the heavier burden of demonstrating a clear probability that his life or freedom would be threatened on the same grounds as those for asylum eligibility and must also support the application "by evidence establishing that it is more likely than not that the alien would be subject to persecution." *INS v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984); *Tarvand,* 937 F.2d at 975. An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution, but this may be rebutted by evidence establishing a change in conditions in a country such that any fear of future persecution would no longer be objectively reasonable. 8 C.F.R. § 208.13(b)(1)(i).

■ There is no question that the BIA decision in the case meets the substantial evidence test. The BIA accepted Singh's theory of imputed political opinion, concluding that the Indian government detained and questioned him because it was investigating "those thought—right or wrongly—to be militants seeking the violent overthrow of the government." But while Singh admitted he believed the security forces were questioning him because they were interested in appre-

hending "so-called terrorists," he acknowledged that he was not politically active, that he had never had trouble with the government before he encountered the armed militants and that, although beaten, he was released after paying a bribe. The Board could thus fairly conclude that whatever interest the militants had in Singh was not because of his political views, but because they sought to recruit someone to provide them with needed transportation. Such motivation, however, even if accompanied by regrettable physical force, has been held not to be "because" of persecution on account of political opinion. *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *accord, Matter of R-,* Interim Decision 3195 (BIA 1992); 1992 WL 386814. The asylum statute "does not extend eligibility for asylum to anyone who fears the general danger that inevitably accompanies political ferment and factional strife." *Huaman–Cornelio,* 979 F.2d at 1000. Singh did not show that he would be "subjected to persecution or other harm based on actual or imputed opinion, any more than any other citizen of [India] who participated in or refused to participate in the activities of either the guerillas or the army." *Cruz–Diaz v. INS,* 86 F.3d 330, 332 (4th Cir.1996). His evidence in sum was not "so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias,* 502 U.S. at 484, 112 S.Ct. at 817. Put differently, the BIA's decision to deny Singh asylum was supported by substantial evidence from the record as a whole. *Huaman–Cornelio,* 979 F.2d at 999.[5]

■ Since Singh cannot meet the less demanding burden of proof for asylum, he also fails to carry his higher burden regarding qualification for withholding of deportation. *INS v. Cardoza–Fonseca,* 480 U.S. 421,

**5.** The Court agrees with the INS that Singh's arguments regarding country-wide persecution are irrelevant. Singh's argument in full is that, having shown he was persecuted by the Indian government, the INS was required to demonstrate that the persecution of him as an individual would not continue country-wide. *See Abdel–Masieh v. INS,* 73 F.3d 579, 586–87 (5th Cir. 1996). But assuming that is true, the point is the

BIA found no past persecution. It therefore appropriately stated that "[i]n view of the manner of our disposition of this case, we need not address the issue of country-wide persecution." Additionally, whatever the IJ might have said about the issue is unimportant since the Court reviews the decision of the BIA, not that of the IJ. *Chen Zhou Chai v. Carroll,* 48 F.3d 1331, 1338 (4th Cir.1995).

430–32, 107 S.Ct. 1207, 1212–13, 94 L.Ed.2d 434 (1987). ·

## VI.

██ Singh meanwhile challenges his detention which he says denies him due process because he has "no idea" as to when he might be released. The INS argues that Singh's continued detention is proper. Again, the INS must prevail.

██ Detention of aliens pending deportation or exclusion proceedings does not violate the alien's constitutional or statutory rights. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *Palma v. Verdeyen*, 676 F.2d 100 (4th Cir.1982). The Attorney General has implicit authority to detain an excludable alien indefinitely after an unsuccessful attempt to return him. *Id.* at 104.

██ It is true that an alien with no documentation may be paroled pending a determination of his admissibility. Thus 8 U.S.C. § 1182(d)(5)(A) provides that:

"The Attorney General may in [her] discretion parole into the United States temporarily under such conditions as [she] may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States. . . ." [6]

██ But the standard of review of a decision of the Attorney General to deny parole is whether she had a "facially legitimate and bona fide reason" for her decision. *See Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972). Parole, moreover, is "an indulgence to be granted only occasionally, in the case of rare and exigent circumstances, and only when it would plainly serve the public interest." *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1446 (9th Cir.1995).

The Court has no reason to doubt the bona fides of the argument advanced by the INS that Singh presents a serious risk of absconding. He arrived in this country without a passport, visa or travel papers, had no documents of identification, no visible means of support and admitted to having no relatives or other ties to this country. He is subject to a final administrative order of exclusion with no alternative relief in sight. Under the circumstances, he would have little reason to return to the custody of the INS if he were paroled. Singh has already evidenced a lack of inclination to comply with immigration procedures because he left the sterile transit area in Germany after being excluded from the United States early on.

██ Under 8 U.S.C. § 1227(a)(1), aliens subject to final orders of exclusion are to be immediately deported "unless the Attorney General, in an individual case, in [her] discretion, concludes that immediate deportation is not practicable or proper." Here the INS points out that Singh's immediate deportation is not practicable because the Indian government has failed to provide it with appropriate travel documents despite requests on multiple occasions. The INS indicates that it expects to act expeditiously to remove Singh from the United States once the Government of India provides the necessary travel documents. The Court accepts the representation of the INS. Delay caused by an applicant's own government cannot justify his release from Service custody. *See Jean v. Nelson*, 727 F.2d at 975 ("A foreign leader could eventually compel us to grant physical admission via parole to any aliens he wished by the simple of expedient of sending them here and then refusing to take them back").

In summary, Singh has no constitutional right to protest his lengthy detention nor does he have any basis to question the legitimacy and bona fides of the Attorney General's decision not to parole him.

## VII.

For the foregoing reasons, Singh's Petition for Writ of Habeas Corpus will be DENIED.

**6.** This section was amended by the IIRIRA to read:

The Attorney General may ... in [her] discretion parole into the United States temporarily under such conditions as [she] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit or for reasons deemed strictly in the public interest any alien applying for admission to the United States. § 1182(d)(5)(A) (West Supp. 1997).

A separate Order implementing this Opinion will be entered.

### FINAL ORDER

Upon consideration of the Petition of Kunden Singh for Writ of Habeas Corpus and the Opposition of the United States Immigration and Naturalization Service, et al. thereto, it is for the reasons set forth in the accompanying Opinion this 27th day of May, 1997

ORDERED that the Petition for the Writ of Habeas Corpus is hereby DENIED; and it is further

ORDERED that the Clerk of the Court shall CLOSE this case.