**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SOULEYMANE DEMBELE,
Petitioner,

v.

U.S. IMMIGRATION &
NATURALIZATION SERVICE,
Respondent.

No. 98-1249

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-370-463)

Submitted: August 25, 1998

Decided: September 10, 1998

Before WILLIAMS and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, Arlington, Virginia, for Petitioner. Frank W.
Hunger, Assistant Attorney General, Allen W. Hausman, Senior Liti-
gation Counsel, James A. Hunolt, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Souleymane Dembele petitions for review of a final order of the Board of Immigration Appeals ("Board"), dismissing his appeal and affirming the Immigration Judge's ("IJ's") decision denying his application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

Dembele is a citizen of Burkina Faso, who entered the United States as a nonimmigrant student in 1991. He applied for political asylum, stating that he would be persecuted by the government if he returned to Burkina Faso. After his father's death in 1978, Dembele was supported by his uncle, Wataman Lamien, a cabinet member of the communist dictatorship headed by Thomas Sankara. Sankara established local groups called Committees in Defense of the Revolution ("CDR"), which disseminated propaganda in support of Sankara's policies. Dembele joined the Burkina Faso army and became a CDR member.

In October 1987, Sankara's Minister of Justice, Blaise Compaore, overthrew the Sankara regime and killed Sankara. [1] Dembele alleges that the Compaore regime also killed his uncle. Burkina Faso remained a communist country, and Compaore abolished the CDR's and established his own similar Revolutionary Committees ("CR"). Dembele did not join Compaore's CR, but remained in the army for four more years.

In February 1991, Dembele and another man in his unit were ordered to go fight in Liberia. Contrary to standard procedure, Dembele alleges that his superiors told him that they did not order him to go to Liberia, but that the order came from another source. Due to the

_____

[1] Compaore is still in power today.

2

allegedly irregular sources and procedures, his connection to his uncle, a former cabinet member in Sankara's regime, and his decision not to join Compaore's CR, Dembele concluded that the order was a disguised effort to eliminate him. Accordingly, Dembele left the army and fled to the Ivory Coast.

Dembele stayed with friends in the Ivory Coast for a few months. He arranged with some of his uncle's friends in Burkina Faso to get travel documents, including a Burkina Faso passport issued in his own name and a United States visa. In May 1991, Dembele returned to Burkina Faso to retrieve the documents. He retrieved the passport, but the visa was not ready so he returned to the Ivory Coast the next day. In September 1991, he returned to Burkina Faso, obtained a student visa in one day, and returned to the Ivory Coast. He then entered the United States.

Following a deportation hearing, the Immigration Judge ("IJ") found Dembele deportable. The IJ found Dembele's testimony incredible and uncorroborated and denied his application for asylum and withholding of deportation. The Board dismissed his appeal, finding that even accepting Dembele's version of events as true, the evidence was insufficient to show that Dembele was persecuted or that he harbors an objective, well-founded fear of persecution on account of a protected ground. Dembele filed a timely petition for review.

The Immigration and Nationality Act ("the Act") authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. Presenting "`candid, credible, and sincere testimony,' [which] demonstrat[es] a genuine fear of persecution," satisfies the subjective element. Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing

3

of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. See id. Further, to qualify for withholding of deportation, a standard much more stringent than that for granting asylum, an applicant must demonstrate "a clear probability of persecution." INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987).

We will uphold the Board's determination that Dembele is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). **2** We accord the Board all possible deference, Huaman-Cornelio, 979 F.2d at 999, and will reverse the Board's decision "only if the evidence presented by [Dembele] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

We conclude that substantial evidence supports the Board's finding that Dembele failed to present credible evidence establishing that he suffered past persecution in Burkina Faso. The IJ found, and the Board agreed, that there were numerous inconsistencies between Dembele's application for asylum and his testimony. **3** In addition,

---

**2** We note that 8 U.S.C. § 1105a(a)(4), was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 ("IIRIRA"), effective April 1, 1997. Because the case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4), is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.
**3** Dembele attributes these inconsistencies to a language barrier and ineffective assistance of counsel. His ineffective assistance of counsel claim is not properly before this court because he failed to raise the issue before the Board. See Tarvand v. INS, 937 F.2d 973, 977 (4th Cir. 1991) (stating that failure to exhaust administrative remedies precludes appellate review).

4

Dembele's belief that his superiors ordered him to fight in Liberia in an attempt to eliminate him is purely speculative. Thus, absent corroboration of Dembele's assertions of past persecution, we find that the Board properly denied asylum. See Matter of Dass, 20 I&N Dec. 120, 124 (BIA 1989) (holding that corroboration should be presented where available, but that testimony alone may suffice provided it is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for the claim). Because Dembele failed to satisfy the lower burden of proof required for asylum, he also failed to establish a clear probability of persecution, which is required for withholding of deportation. See Cardoza-Fonseca, 480 U.S. at 430-32.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5