[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10023
Non-Argument Calendar
_____

Agency No. A095-226-437

FNU LENA,
a.k.a. Sari Wati,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 21, 2014)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

FNU Lena, a native and citizen of Indonesia, seeks review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) denial of asylum.[1]  Lena had been granted asylum previously in 2002, but the United States Citizenship and Immigration Services (USCIS) terminated that asylum because her previous application, prepared by someone else, contained fraudulent information.  After review,[2] we deny Lena's petition for review in part and dismiss in part.

## I.  DISCUSSION

### A.  Eligibility for Asylum

Lena asserts that substantial evidence does not support the BIA's determination she was ineligible for asylum.  She contends she established past persecution and a well-founded fear of persecution on account of being an ethnic Chinese and a Christian.

---

[1]  The order also affirmed the IJ's denial of withholding of removal and relief under the United Nations Convention Against Torture (CAT).  However, Lena has abandoned any challenge to the denial of her application for withholding of removal or CAT relief.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

[2]  We review legal determinations *de novo*, *Alturo v. U.S. Att'y Gen.*, 716 F.3d 1310, 1313 (11th Cir. 2013), and review factual determinations under the substantial evidence test, *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  "We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* at 1027 (quotations omitted).  To reverse factual findings, we must find that the record not only supports reversal, but compels it.  *Id.*

2

An applicant for asylum must meet the definition of a refugee.  8 U.S.C. § 1158(b)(1).  The definition of "refugee" includes:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  To establish eligibility, the applicant must, "with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a 'well-founded fear' that the statutorily listed factor will cause future persecution."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

The record does not compel a finding that Lena suffered past persecution on account of being an ethnic Chinese and Christian.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) ("Persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." (quotations omitted)).  While the BIA did not state explicitly that it was considering the alleged incidents of past persecution cumulatively, it noted its agreement with the IJ's determination that Lena did not establish past persecution.  The IJ considered the cumulative impact of the events Lena experienced, which included being (1) called derogatory names on multiple occasions, (2) assaulted during a Muslim fasting period because

3

she was drinking a beverage, (3) scared to leave her house for two days during the 1998 riots in which Chinese were killed, raped, and robbed, and (4) robbed and assaulted on her way to church on Christmas day.  When compared to our precedent, this mistreatment does not constitute persecution.  *Compare Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 859, 861-62 (11th Cir. 2007) (finding past persecution based on the cumulative effects of (1) an attack where masked men fired unloaded weapons at the aliens, (2) an attack that included a severe beating, (3) the continued phone threats, and (4) two occasions where one of the alien's car brakes were cut), *with Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009) (concluding a four-day detention, including a five-hour interrogation and beating that did not result in any physical harm, accompanied by post-incarceration monitoring, did not compel a conclusion of persecution),  *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (holding a 36-hour detention in a small cell shared by 12 people, as well as multiple beatings, one of which involved a belt and resulted in scratches and bruises, did not compel the conclusion the petitioner suffered persecution), *and Sepulveda*, 401 F.3d at 1231 (holding the bombing of the restaurant at which the alien worked and telephone calls and threats made to the alien, alien's brother, and other members of a university group did not compel a finding of past persecution).

4

Furthermore, substantial evidence supports the BIA's determination that Lena did not have a well-founded fear of future persecution because her fear was not objectively reasonable. *See Ruiz*, 440 F.3d at 1257 (explaining if an applicant cannot demonstrate past persecution, eligibility for asylum may be established by showing a well-founded fear of future persecution that is subjectively genuine and objectively reasonable). The 2011 Religious Freedom Report states the government protects religious freedom and recognizes Protestantism as an official religion. While there have been instances of religious intolerance against Christians, the Issue Paper showed the government was taking steps to bring those responsible to justice. In recent years, there has been a dramatic drop in religiously-motivated violence against Christians. While the articles Lena submitted showed evidence of instances of religious intolerance, they do not compel a finding of a well-founded fear of persecution. The 2011 State Department materials acknowledge such instances of religiously-motivated violence while indicating that religious intolerance has decreased in recent years. Lena did not submit any materials that showed recent mistreatment of Chinese Christians. Moreover, Lena's testimony that her mother, a Chinese Christian woman, continues to live in the country, supports the BIA's decision.[3]

---

[3] Lena's argument that the BIA failed to apply the "disfavored group" analysis to Chinese Indonesians in determining whether there was a pattern or practice of persecution was raised for the first time on appeal, and therefore, we lack jurisdiction to review it. *See Amaya-*

5

## B. *Termination of Asylum*

Lena also asserts the BIA erred in its conclusion that the USCIS had the authority to terminate her prior grant of asylum. She bases this argument on the differing language of the statutes addressing the grant or termination of asylum.

The statue providing for a grant of asylum, 8 U.S.C. § 1158(b)(1)(A), provides "*[t]he Secretary of Homeland Security or the Attorney General* may grant asylum to an alien" if the alien has properly applied for asylum and is a refugee as defined by 8 U.S.C. § 1101(a)(42)(A)." (Emphasis added). The statute providing for termination of asylum, 8 U.S.C. § 1158(c)(2), provides that a grant of asylum "may be terminated if the *Attorney General* determines that" any of several conditions are met, including if the alien no longer meets the conditions described in 8 U.S.C. § 1158(b)(1). (Emphasis added). The regulation addressing termination of asylum states, however, that "[a]n asylum officer [of the USCIS] may terminate a grant of asylum made under the jurisdiction of [the] USCIS if, following an interview, the asylum officer determines" that "[t]here is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted." 8 C.F.R. § 208.24(a)(1). Lena argues that, looking to the plain language of 8 U.S.C. § 1158(c)(2), only the Attorney General has the

---

*Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006) (stating if a petitioner has failed to exhaust his administrative remedies, we lack jurisdiction to consider the claim).

6

authority to terminate her prior grant of asylum.  She finds support for this argument in *Nijjar v. Holder*, 689 F.3d 1077, 1082 (9th Cir. 2012), which holds that "Congress did not confer the authority to terminate asylum on the Department of Homeland Security [DHS].  Congress conferred that authority exclusively on the Department of Justice."

Prior to the inception of the DHS, the Attorney General delegated the authority over asylum claims, including the termination of grants of asylum, to the Commissioner of the Immigration and Naturalization Service (INS), and the Executive Office for Immigration Review.  *Nijjar*, 689 F.3d at 1078; *see also Pierre v. Rivkind*, 825 F.2d 1501, 1504 (11th Cir. 1987) ("[the] INS, under authority delegated to it by the Attorney General, may, in its discretion, grant an alien asylum"); *Gebremichael v. INS*, 10 F.3d 28, 32 n.9 (1st Cir. 1993) (noting the Attorney General's authority in asylum matters was delegated to the INS).

In 2003, the power formerly exercised by the INS Commissioner over "[a]djudications of asylum and refugee applications," was transferred to the USCIS by section 451 of the Homeland Security Act.  *See* 6 U.S.C. § 271(b) (providing "there are transferred from the Commissioner of Immigration and Naturalization to the Director of the Bureau of Citizenship and Immigration Services the following functions . . . (3) Adjudications of asylum and refugee applications . . . . [and] (5) All other adjudications performed by the [INS] immediately before [the

7

Homeland Security Act's effective date]").  Additionally, in transferring functions

from the INS to the DHS, 6 U.S.C. § 557 provided:

> With respect to any function transferred by or under this chapter . . . ,
> reference in any other Federal law to any department, commission, or
> agency or any officer or office the functions of which are so
> transferred shall be deemed to refer to the Secretary, other official, or
> component of [DHS] to which such function is so transferred.

In *Scheerer v. U.S. Att'y Gen.*, we held that, while the language of 8 U.S.C.

§ 1255(a) gave the authority to adjust the status of a nonimmigrant to that of a

permanent resident to the Attorney General, Congress had "allocated jurisdiction

over adjustment applications to *both* [the] DHS and the Department of Justice."

513 F.3d 1244, 1251 (11th Cir. 2008) (emphasis added).  In making this

determination, we noted:

> Section 1255(a) refers only to adjustment of status "by the Attorney
> General," but Congress has transferred the adjudication functions of
> the former Immigration and Naturalization Service (INS) to the
> Secretary of Homeland Security and his delegate in USCIS.  6 U.S.C.
> § 271(b)(5); *see also* 6 U.S.C. § 577 (providing that references in
> federal law to any officer whose functions have been transferred to
> DHS shall be deemed to refer to DHS Secretary or other official).

*Id.* at 1251 n.6.

The BIA did not err in holding the USCIS had the authority to terminate

Lena's asylum status.  Like the statute at issue in *Scheerer*, the language of the

statute at issue here expressly delegated the authority to act only to the Attorney

General.  *Compare* 8 U.S.C. § 1255(a), *with* 8 U.S.C. § 1158(c)(2).  However, as

8

was the case in *Scheerer*, this language does not limit the authority to act solely to the Attorney General.   In reaching our conclusion in *Scheerer*, we specifically examined the transfer and statutory construction provisions of 6 U.S.C. §§ 271(b) and 557, concluding that "Congress has transferred the adjudication functions of the former [INS] to the Secretary of [the DHS] and his delegate in [the] USCIS." 513 F.3d at 1251 n.6.   The adjudication functions of the INS included the adjudication of asylum.  *See Rivkind*, 825 F.2d at 1504; *Gebremichael*, 10 F.3d at 32 n.9.  *Scheerer* controls this case, and thus our precedent supports that the authority to terminate asylum transferred to the USCIS.  *See Scheerer*, 513 F.3d at 1251-52 & n.6.

### PETITION DENIED IN PART, DISMISSED IN PART.